No. 103,367

SUPERIOR BOILER WORKS, INC., *Appellant*, v. F. ROBERT KIMBALL, MARK STUERMAN, and FERRIS KIMBALL COMPANY, LLC, *Appellees*.

(259 P.3d 676)

Opinion filed August 12, 2011.

*Vincent F. Reilly*, of Reilly, Janiczek & McDevitt, P.C., of Merchantville, New Jersey, argued the cause, and *Lewis C. Miltenberger*, of the Miltenberger Law Firm, PLLC, of Southlake, Texas, and *Thomas E. Rice, Jr.*, of Baker Sterchi Cowden & Rice, L.L.C., of Overland Park, were with him on the brief for appellant Superior Boiler Works, Inc.

*Dennis L. Horner*, of Horner & Duckers, Chartered, of Kansas City, Kansas, argued the cause, and *Keith C. Sevedge*, of Lenexa, was with him on the brief for appellee F. Robert Kimball.

*Eric D. Barton*, of Wagstaff & Cartmell, LLP, of Kansas City, Missouri, argued the cause, and *Tyler Hudson* and *Adam S. Davis*, of the same firm, were with him on the brief for appellees Mark Stuerman and Ferris Kimball Company, LLC.

The opinion of the court was delivered by

LUCKERT, J.: In *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177 (1987), this court concluded that "absent some independent tort, contract, agreement, voluntary assumption of duty, or special relationship of the parties, the new tort of 'the intentional interference with a prospective civil action by spoliation of evidence' should not be recognized in Kansas." *Koplin*, 241 Kan. at 215. In reaching this holding, this court reserved the question of whether Kansas would recognize the tort if a defendant or potential defendant in an underlying case destroyed evidence to their own advantage. *Koplin*, 241 Kan. at 215.

In this appeal, Superior Boiler Works, Inc. (Superior), argues a special relationship existed between it and F. Robert Kimball, Mark Stuerman, and Ferris Kimball Company, LLC (FK Company) (collectively Defendants), that required the Defendants to preserve evidence. Alternatively, Superior argues the facts of this case require us to address the question the *Koplin* court reserved and further argues we should answer the reserved question by recognizing the tort and applying it to give Superior the right to recover from the Defendants. The district court rejected these arguments and granted the Defendants summary judgment, finding there was not a contract, agreement, voluntary assumption of duty, or special relationship requiring the Defendants to preserve evidence and the reserved question did not apply to spoliation claims between those who are potential codefendants in the underlying action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Superior brought suit against the Defendants on two counts, labeling Count I as "Intentional Interference with Actual and Prospective Actions by Destruction of Evidence" and Count II as "Negligent Interference with Actual and Prospective Actions by Destruction of Evidence." Eventually, all parties filed motions for summary judgment. The district court denied Superior's motion and granted those of each defendant.

In one of those summary judgment decisions, specifically the order granting summary judgment to Kimball, the district court recited the following uncontroverted facts that explain the rela-

tionship of all of the parties and provide the context of Superior's allegations:

"Defendant Kimball was affiliated with Ferris Kimball Company [FK Company] through 1999. Specifically, Kimball was a partner with his father in the [FK] Company. In 1984, Kimball became the owner of the sole proprietorship doing business as [FK] Company. Kimball sold [FK] Company to Mark Stuerman in 1999. [There were various business forms of FK Company that we will generically refer to as FK Company, accepting, without analysis, Superior's argument that successor liability principles apply.]

"Throughout March and April 2002, [Superior] contacted [FK Company] seeking information regarding asbestos content in materials supplied to [Superior] for use in its boilers. On March 21, 2002, [Superior] asked [FK Company] and/or Mark Stuerman for information concerning Plibrico Products and asbestos material [Superior] had purchased. In March 2002, [FK Company] sent an inquiry to Plibrico seeking information to answer [Superior's] inquiry. [FK Company], via defendant Mark K. Stuerman, then transmitted correspondence to [Superior], answering its inquiry. The correspondence specified the names of all products sold and provided that one product may or may not have contained some asbestos. In April 2002, [Superior] submitted another inquiry to [FK Company] asking for poundage figures on sales of products, from [FK Company] to [Superior], between 1967 and 1983. In response, [FK Company] and/or Mark Stuerman transmitted a letter to [Superior] with attachments detailing sales, from [FK Company] to [Superior], between 1967 to 1983. [In doing so, Stuerman referenced company index cards, which contained the names of customers, dates of orders, and materials ordered.] The attachments categorized sales by year and product and provided specific weights purchased by invoice, year and product. [Superior] made no further requests for information or documents, from [FK Company], until 2007."

Five years elapsed before there was further contact between Superior and any of the Defendants regarding the records. The district court found the following uncontroverted facts relating to what transpired when contact was renewed:

"In 2007, counsel for [Superior] contacted Robert Kimball and told Kimball that [Superior] was involved in asbestos related litigation; that Kimball's company had supplied products which were used in [Superior's] boilers; and thus, [Superior] was interested in 'looking at whatever materials Kimball had' regarding products supplied by [FK Company] to [Superior]. In March 2007, counsel for [Superior] forwarded correspondence to counsel for Stuerman and [FK Company] 'stating that [Superior] *intended to* subpoena any and all documents related to the sale of refractory products from [FK Company] to [Superior],' including 'all documents reviewed or referred to in preparation of the 2002 correspondence as well

as all documents which concerned the sale of products from [FK Company] to [Superior].' Kimball did not expressly agree to preserve or maintain the index cards."

After receiving this letter, the Defendants destroyed FK Company's old company records dating back to the 1930's, including those that had been used to compile the information provided in 2002. Of these destroyed records, the primary evidence sought by Superior consisted of index cards, which detailed product sales from 1967 through 1983, and so-called "gold sheets," which recorded information regarding orders. Before destroying any records, Stuerman sought the advice of counsel. He then contacted Cintas Corporation, a shredding service, and on March 1, 2007, Cintas picked up three pallets of records and destroyed them, off site, the next day. The index cards were not included in the materials handed over to Cintas. Kimball gained possession of the index cards and destroyed them himself in early March 2007.

It was uncontroverted that at the time the Defendants "purged the records, neither Robert Kimball, Ferris Kimball Co., nor any of its other past or present employees had been served, subpoenaed or otherwise joined in any asbestos litigation." On March 29, 2007, Superior subpoenaed documents relating to evidence of sales by FK Company to Superior. By that time, the company records had been destroyed by the Defendants.

Although there were factual disputes regarding the extent of the Defendants' knowledge about pending litigation or the threat of pending litigation, the district court adopted the view most favorable to Superior and assumed that the Defendants had knowledge of pending asbestos litigation against Superior and knew that FK Company (in its various business forms), Kimball, and Stuerman could be joined as parties in pending or future asbestos litigation. Even assuming those facts in the light most favorable to Superior, the district court concluded that "neither the parties' past, commercial relationship, nor defendants' knowledge of [Superior's] pending litigation created a duty to preserve the index cards." Because there was "no agreement, contract, statute, voluntary assumption of duty, or other special circumstance creating a duty to preserve records," the Defendants "were entitled to destroy them."

Superior now appeals. Our jurisdiction arises from K.S.A. 20-3018(c) (a transfer from the Court of Appeals on this court's own motion).

## ANALYSIS

Superior argues that the district court erred in finding the Defendants did not have a duty to preserve the old company records and in granting summary judgment to the Defendants on that basis. According to Superior, the Defendants had a duty to preserve evidence that they knew or should have known was important to Superior's defense in pending asbestos litigation.

Superior asks this court for a narrow holding, as is emphasized by two limitations it has placed on its argument. One limitation arises because Superior focuses only on intentional spoliation in its appellate brief and, therefore, has waived any issue concerning its negligent spoliation claim. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) (issue not briefed by a party is deemed waived or abandoned). The second limitation arises from the statement in Superior's appellate brief that it "is not seeking the recognition of a general tort of spoliation in Kansas, but rather submits that a cause of action should be recognized for the very particular fact scenario which exists in this case and which was left to 'another day' " in *Koplin*. See *Koplin*, 241 Kan. at 213. With that focus in mind, we must determine if the district court erred in granting summary judgment in favor of the Defendants.

### Standard of Review

This court's standard of review on appeal from summary judgment is a familiar one:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

On appeal from summary judgment, an appellate court applies the same rules as the district court, and where the appellate court finds reasonable minds could differ as to the conclusions drawn from the evidence, it must find that the grant of summary judgment was in error. *Miller*, 288 Kan. at 32. When material facts are uncontroverted, an appellate court reviews summary judgment de novo. *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 240, 201 P.3d 680 (2009); *Troutman v. Curtis*, 286 Kan. 452, Syl. ¶ 1, 185 P.3d 930 (2008).

In this appeal, the facts related to the parties' motions for summary judgment are largely uncontroverted; the only topic of dispute relates to whether the Defendants knew they were likely to become parties in asbestos litigation. Like the district court, we must view the facts in the light most favorable to Superior, and consequently we assume the Defendants knew they could become a party in some litigation.

Given this assumed knowledge, we are presented with the questions of (1) whether, under the uncontroverted facts, the Defendants had a duty to preserve the evidence—*i.e.*, the index cards and gold sheets—under any of the circumstances recognized in *Koplin*, 241 Kan. 206, Syl. ¶ 2, or, if not, (2) whether we will recognize an independent tort of intentional spoliation when the claim is brought by a defendant against a codefendant or potential codefendant in an underlying lawsuit.

These questions are ones of law and are subject to de novo review. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 968, 26 P.3d 1246 (2001) (on appeal from summary judgment, question of whether Kansas would recognize a tort was a question of law subject to plenary appellate review), *cert denied* 534 U.S. 1081 (2002); *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991) (existence of a legal duty is a question of law to be determined by the court); see *Koplin*, 241 Kan. at 207 (under K.S.A. 60-3201 *et seq.*, certified questions may present only questions of law, meaning certified question of whether Kansas would recognize intentional spoliation under the facts was an issue of law).

*Koplin v. Rosel Well Perforators, Inc.*

As noted, *Koplin*, 241 Kan. 206, frames the issue of law that is presented in this appeal. In *Koplin*, a federal court certified facts and issues of law for this court's consideration. According to the federal court's factual statement, Koplin had suffered an on-the-job accident when a T-clamp malfunctioned. His employer, Rosel Well Perforators, Inc., destroyed the T-clamp immediately after the accident. Koplin recovered workers compensation benefits and then filed a products liability suit against several defendants. In the products liability suit, Koplin also made a claim against his employer for intentional interference with a prospective civil action by spoliation of evidence.

Analyzing the question of whether Kansas would recognize the spoliation cause of action, the *Koplin* court noted the tort was relatively new but had been recognized by other jurisdictions. *Koplin*, 241 Kan. at 208; see *Edwards v. Louisville Ladder Co.*, 796 F. Supp. 966, 968 (W.D. La. 1992) ("Despite the fact that the origins of a tort for spoliation of evidence trace back to at least 1973 no general consensus has developed as to the basis, essential elements, or even existence of such a tort."). In reflecting on the case law from other jurisdictions, the *Koplin* court discussed two distinctions that classified the cases.

The first classification arose from the traditional tort distinction between negligent and intentional actions. At the time *Koplin* was decided, most cases addressing the spoliation tort had dealt with the negligent destruction of evidence. As in this case, the *Koplin* court had not been asked to recognize the tort of negligent spoliation. Consequently, the *Koplin* court concluded the rationale of those decisions was not "persuasive because they are based upon negligence as opposed to an intentional interference with a third-party action." *Koplin*, 241 Kan. at 210.

Turning its attention to intentional spoliation, the *Koplin* court, 241 Kan. at 210-12, noted there were only two jurisdictions recognizing the tort when the allegation was that the evidence had been intentionally destroyed: *Smith v. Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (1984), *disapproved by Cedars-*

*Sinai Medical Center v. Superior Court,* 18 Cal. 4th 1, 74 Cal. Rptr. 2d 248, 954 P.2d 511 (1998), and *Hazen v. Municipality of Anchorage,* 718 P.2d 456 (Alaska 1986). Superior relies on *Smith* and *Hazen.*

In the California case of *Smith,* 151 Cal. App. 3d 491, the plaintiff was injured when the rear wheel and tire flew off a van and crashed into the plaintiff's windshield. Immediately after the accident, the van was towed to the dealer that had customized the van. A few days after the accident, the dealer agreed with Smith's counsel to preserve the physical evidence, consisting of certain automotive parts including customized wheels, for later use in a possible action against the dealer or others. The evidence was subsequently lost or destroyed, making it impossible for Smith to pursue her claim. She then sued the dealer, alleging a cause of action for " 'Tortious Interference with [a] Prospective Civil Action By Spoliation of Evidence.' " *Smith,* 151 Cal. App. 3d at 495.

The *Smith* court considered various arguments, pro and con, and ultimately concluded that a tort of spoliation was analogous to the tort of intentional interference with a prospective business advantage. That tort, the court stated, allows recovery for interference with a business relationship where the expectations of the parties are the subject of an unenforceable contract. To prove that claim, all a plaintiff was required to allege was a "reasonable probability" that a contract or profit would have resulted but for the defendant's acts. The California Court of Appeals in *Smith* found that a prospective civil action in a product liability case is also a "probable expectancy" to be protected from interference. *Smith,* 151 Cal. App. 3d at 502. (Fourteen years after the decision in *Smith* and 11 years after *Koplin,* the decision in *Smith* was limited to its facts—namely, where the spoliator was alleged to have agreed to preserve the evidence—and the general tort of intentional first-party spoliation was disapproved by the California Supreme Court in *Cedars-Sinai Medical Center,* 18 Cal. 4th at 14 n.3, 18 n.4; see also *Temple Community Hospital v. Superior Court,* 20 Cal. 4th 464, 466, 84 Cal. Rptr. 2d 852, 976 P.2d 223 [1999] [disapproving of tort of intentional third-party spoliation].)

In the Alaska case of *Hazen*, 718 P.2d 456, the plaintiff, Penny Hazen, brought an action for intentional spoliation of evidence that she alleged would exonerate her from criminal prostitution charges. During the criminal case, Hazen learned the prosecution was relying on a conversation between Hazen and an undercover police officer who had recorded the conversation. The recording became inaudible, however, and Hazen, who alleged the recording would have documented her telling the officer that sex was not available at her massage parlor, claimed the arresting officers, the city, and the city attorney destroyed the recording to protect themselves from false arrest and malicious prosecution claims. The Alaska Supreme Court found *Smith*, 151 Cal. App. 3d 491, persuasive and held that Hazen had a cause of action for intentional interference with a prospective civil action by spoliation of evidence. The *Hazen* court stated that Hazen's false arrest and malicious prosecution actions were valuable probable expectancies that were destroyed or diminished by the destruction of the recording. *Hazen*, 718 P.2d at 463-64.

The *Koplin* court distinguished *Smith*, 151 Cal. App. 3d 491, and *Hazen*, 718 P.2d 456, because those cases involved claims "wherein *the defendants or potential defendants in the underlying case* destroyed the evidence to their own advantage." (Emphasis added.) *Koplin*, 241 Kan. at 213. In doing so, the *Koplin* court recognized the second distinction made in the case law, which classifies spoliation committed by a party to a principal or underlying lawsuit as first-party spoliation and spoliation committed by a nonparty to the principal or underlying lawsuit as third-party spoliation. See *Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 267, 229 P.3d 1008 (2010); *Howard Regional Health System v. Gordon*, 925 N.E.2d 453, 463 n.7 (Ind. App.), *transfer granted* 940 N.E.2d 823 (2010). The question of whether the court would recognize first-party spoliation—*i.e.*, spoliation by a defendant or potential defendant—was one the *Koplin* court concluded was not before the court because it was Koplin's employer who had destroyed the T-clamp and the employer was not a party or potential party in the products liability suit. In other words, the question the *Koplin* court

left "for another day" was whether it would recognize a tort of intentional first-party spoliation. See *Koplin*, 241 Kan. at 213.

Addressing the question presented by the facts, the *Koplin* court noted the employer had destroyed its own property at a time when Koplin "had no claims against his employer except pursuant to the workers' compensation laws. There are no special circumstances or relationships which created any duty for appellee to preserve the T-clamp." *Koplin*, 241 Kan. at 213. This conclusion rested on a point the court emphasized throughout the opinion: "It is fundamental that before there can be any recovery in tort there must be a violation of a duty owed by one party to the person seeking recovery." *Koplin*, 241 Kan. at 212. The court noted that there was no common-law duty to preserve evidence and the employer

"had an absolute right to preserve or destroy its own property as it saw fit. To adopt such a tort and place a duty upon an employer to preserve all possible physical evidence that might somehow be utilized in a third-party action by an injured employee would place an intolerable burden upon every employer." *Koplin*, 241 Kan. at 212.

The court then analogized Koplin's claim to Kansas case law rejecting a civil cause of action for perjury or conspiracy to commit perjury, citing *Hokanson v. Lichtor*, 5 Kan. App. 2d 802, 804-05, 626 P.2d 214 (1981). The *Koplin* court noted that the same analogy had been drawn by the dissenting judge in *Bondu v. Gurvich*, 473 So. 2d 1307 (Fla. Dist. App. 1984), *disapproved by Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342 (Fla. 2005), in which the Florida Court of Appeals allowed a spoliation claim. Specifically, the *Koplin* court quoted the dissenting judge in *Bondu*, Chief Judge Schwartz, who concluded that if an independent action is recognized for improper conduct by a party or witness, such as destroying evidence or committing perjury, " 'every case would be subject to constant retrials in the guise of independent actions.' 473 So. 2d at 1313-14." *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 214, 734 P.2d 1177 (1987). Agreeing with that point, the *Koplin* court concluded the "doctrine recognized in *Hokanson* [that no civil cause of action for damages should be recognized for perjury or conspiracy to commit perjury by a witness or party] is sound and applies to a destruction of evidence as well as perjured testimony."

*Koplin*, 241 Kan. at 215. (Subsequent to the *Koplin* decision, the Florida Supreme Court in *Martino*, 908 So. 2d 342, disapproved the Florida Court of Appeals' decision in *Bondu*, 437 So. 2d 1307, and this court reaffirmed the rationale of *Koplin* and *Hokanson* in *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 306, 315-18, 918 P.2d 1274 [1996], where we held Kansas does not recognize the independent tort of "embracery," which means " 'to influence a jury corruptly.' [Citation omitted.]")

The *Koplin* court then listed five reasons it was rejecting the tort of intentional spoliation of evidence, including:

(1) "the generation of endless litigation (as recognized by Chief Judge Schwartz in *Bondu*)";

(2) "inconsistency with the intent of the workers' compensation laws";

(3) "rank speculation as to whether the plaintiff could have ever recovered in the underlying action and, if so, the speculative nature of the damages";

(4) "the limitless scope of the new duty which would be created"; and

(5) "the unwarranted intrusion on the property rights of a person who lawfully disposes of his own property." *Koplin*, 241 Kan. at 215.

Subsequent to the decision in *Koplin*, several other courts have reached the same or similar conclusions in both first-party and third-party spoliation cases. See *Temple Community Hospital*, 20 Cal. 4th at 476 (reiterating its reasons for rejecting first-party spoliation and concluding no tort cause of action will lie for intentional third-party spoliation because the "burdens and costs of recognizing a tort remedy for third-party spoliation are considerable—perhaps even greater than in the case of first-party spoliation"); *Meridian Sec. Ins. Co. v. Hoffman Adj. Co.*, 933 N.E.2d 7, 14 (Ind. App. 2010) (stating that Indiana common law does not recognize an independent cause of action for intentional or negligent first-party spoliation of evidence); *Meyn v. State*, 594 N.W.2d 31, 34 (Iowa 1999) (rejecting negligent spoliation claim because it creates endless litigation, it is difficult to impose on a stranger to the liti-

gation a duty to preserve evidence, and it is speculative in nature); *Teel v. Meredith*, 284 Mich. App. 660, 661, 663, 774 N.W.2d 527 (2009), *rev. denied* 485 Mich. 1134 (2010) (observing that "Michigan does not yet recognize as a valid cause of action spoliation of evidence that interferes with a prospective civil action against a third party" and declining to recognize such an action); *Timber Tech v. Home Ins. Co.*, 118 Nev. 630, 633, 55 P.3d 952 (2002) (weighing usefulness of spoliation claims against the burdens associated with permitting them, including " 'the burden to litigants, witnesses, and the judicial system' " imposed by "potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies"); *Elias v. Lancaster General Hosp.*, 710 A.2d 65, 68 (Pa. Super. 1998) (expressly refusing to recognize third-party negligent spoliation claim and stating in dicta that traditional remedies adequately protect nonspoiling party in spoliation case); *Austin v. Beaufort County Sheriff's Office*, 377 S.C. 31, 34-36, 659 S.E.2d 122 (2008) (under the facts, declining to adopt the tort of third-party spoliation of evidence).

With this background in mind, we consider the application of these authorities to the facts of this case.

### Issue 1: Contract, Assumption of Duty, or Special Relationship?

The principle underlying each of the out-of-state cases and *Koplin* is that there is no common-law duty to preserve evidence. Consequently, the duty must arise because of an independent tort, which we will discuss later, or because of a "contract, agreement, voluntary assumption of duty, or special relationship of the parties." *Koplin*, 241 Kan. at 215. (Some states have expanded this list to include a duty based on a statute or regulation that imposes a duty to preserve documents or materials. See, *e.g.*, *Village of Roselle v. Comm. Edison Co.*, 368 Ill. App. 3d 1097, 1113, 859 N.E.2d 1 [2006]. Apparently because of this, the district court included statutory duties in its analysis, but this circumstance is not argued on appeal.)

Superior's first argument focuses on the list of circumstances in which *Koplin* held a duty would arise; Superior suggests each circumstance is applicable. Starting with whether there is a contract or an agreement, although Superior does not counter the district court's finding that there was not an explicit contract or agreement, it suggests there was an implied agreement. Superior's argument about the existence of an implied agreement is essentially the same argument it asserts to suggest that FK Company, through Stuerman, voluntarily assumed a duty to preserve the records when Stuerman researched records of sales and orders and provided the information to Superior in 2002. But Superior cites no authority to support these arguments. Additionally, from a factual perspective, voluntarily researching records of sales and orders and providing a summary of the information is different from either implicitly agreeing or actively undertaking to preserve records, especially for a period of 5 years after the research was performed. Without evidence of an agreement or an actual undertaking to preserve the records, Superior's argument fails. See Restatement (Second) of Torts § 324A (1964) (duty may arise when one undertakes to render services, whether gratuitously or for consideration); see *Sall v. T's, Inc.*, 281 Kan. 1355, 1364, 136 P.3d 471 (2006) (" 'A defendant's agreement or affirmative act indicating a willingness to provide services is a threshold requirement for such a duty to arise.' [Citation omitted.]"); *Hauptman v. WMC, Inc.*, 43 Kan. App. 2d 276, 301-02, 224 P.3d 1175 (2010) (stating that hospital did not, through affirmative action, assume obligation or intend to render services for benefit of employees of air ambulance service, precluding recovery under a negligent undertaking theory). There is no evidence of an undertaking by any of the Defendants to preserve the records.

This leaves one final category, besides the recognition of an independent tort, from the *Koplin* list of potential sources of a duty, *i.e.*, the existence of a special relationship between the parties. Arguing this category applies, Superior suggests a special relationship was formed because (1) the Defendants and Superior were a part of the same chain of product distribution and (2) the Defendants knew Superior was involved in pending asbestos litigation

and that the Defendants could potentially become involved in asbestos litigation.

*Koplin* did not provide a definition of the term "special relationship." In other contexts, this court has stated that a special relationship may arise "between a parent and child, master and servant, persons in charge of one with dangerous propensities, or persons with custody of another." *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, Syl. ¶ 6, 214 P.3d 1173 (2009). In addition, Kansas pattern jury instructions contain a section entitled "Special Relationships of Parties," which identifies and addresses several categories such as agency relationships, partnerships, employer-employee relationships, independent contractors, joint ventures, fellow servants, and duties arising out of the assumption of risk. PIK Civ. 4th 107.00.

None of these relationships exists between Superior and the Defendants. Further, we know that all of these relationships are not a per se basis for creating a duty to preserve evidence because the employer-employee relationship, which arguably is most like the commercial relationship between Superior and the Defendants, did not create a duty to preserve evidence in *Koplin*, 241 Kan. at 213. Moreover, none of these sources explicitly or implicitly support Superior's argument that an arms' length commercial relationship or chain-of-product-distribution relationship is a "special relationship." Superior does not cite any other authority specifically supporting the conclusion that a chain-of-product-distribution relationship is sufficient to create a duty to preserve evidence. In fact, it concedes it can find no such case.

Without persuasive or controlling authority suggesting a chain-of-product-distribution relationship gives rise to a duty, we have considered the various policy reasons cited by the *Koplin* court for rejecting the tort in a third-party setting and have concluded each of those reasons, except interference with workers compensation laws, counters Superior's argument. Specifically,

(1) endless litigation would be generated;

(2) rank speculation would be required as to (a) whether the evidence would have affected the underlying action, (b) whether

the complaining party would have prevailed, and (c) the amount of damages that would have been recovered;

(3)  the scope of the duty would be limitless; and

(4)  there would be an unwarranted intrusion on the property rights of a person who lawfully disposes of his or her own property. See *Koplin*, 241 Kan. at 215.

As to this last reason, if we were to recognize a duty to preserve evidence by all those who stand at a point in the stream of commerce, the duty would extend to those upstream as well as those downstream. The result would be a far-reaching duty, and one of the factors weighed by the *Koplin* court would be extremely relevant: A rule requiring preservation of evidence would create an intolerable burden of requiring most businesses to preserve all records. See *Koplin*, 241 Kan. at 212. As the *Koplin* court noted, such a duty would be "limitless." *Koplin*, 241 Kan. at 215.

These reasons cause us to conclude that simply being in the chain of distribution of a product or in the stream of commerce, without more, is not a special relationship that gives rise to a duty to preserve evidence.

ISSUE 2: IS THIS THE NARROW CASE LEFT FOR ANOTHER DAY?

Having concluded the circumstances listed in *Koplin* that give rise to a duty to preserve evidence do not apply in this case, we must consider Superior's alternative argument that this case presents the issue we left for another day in *Koplin* when we reserved the question of whether Kansas will recognize an independent tort imposing liability on "defendants or potential defendants in the underlying case [who] destroyed the evidence to their own advantage." *Koplin*, 241 Kan. at 213. The Defendants argue and the district court concluded that the question need not be answered in this case because the facts do not fit within the reserved question. Rather, the district court concluded a spoliation claim *between* those who are codefendants or potential codefendants in an underlying action was not included in the reserved question and should not be allowed. Consequently, the preliminary step of our analysis is whether the *Koplin* decision includes spoliation claims

arising between those who are codefendants or potential codefendants in the underlying action.

As phrased in *Koplin*, the reserved question encompasses two groups: (1) defendants in an underlying lawsuit and (2) potential defendants in an underlying lawsuit, where it is the plaintiff in the underlying lawsuit making the spoliation claim against those defendants or potential defendants. In the present lawsuit, it is uncontroverted that the Defendants were not a party to any underlying litigation when they destroyed the records. But Superior argues the Defendants were *potential defendants* in a lawsuit that Superior or others might bring. To establish this point, Superior provided the district court with a civil complaint in which a plaintiff claiming asbestos-related injuries sued some of the Defendants. In that action, the plaintiff also asserted a negligent spoliation claim against FK Company. That claim fits the prototype of first-party spoliation claims, *i.e.*, spoliation claims brought by the plaintiff in the underlying action. *Koplin*, 241 Kan. at 207; *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225, 245-48, 905 A.2d 1165 (2006); see, *e.g., Fletcher v. Dorchester Mutual Insurance Company*, 437 Mass. 544, 546, 773 N.E.2d 420 (2002). If that action had been filed in Kansas, it would present the classic, first-party spoliation claim that was clearly reserved in *Koplin*. In that situation, however, Superior would not have a right to recover for damages incurred by the plaintiff who incurred personal injury from asbestos exposure and who also claimed damages caused by FK Company's destruction of its business records. Rather, Superior must establish a causal relationship between the destruction of the records and any alleged damages to Superior. See *Foster v. Lawrence Memorial Hosp.*, 809 F. Supp. 831, 836 (D. Kan. 1992) (identifying elements of spoliation tort, including damages and causation).

In contrast, the spoliation claim in the present case is made by a defendant in the underlying suit against a potential codefendant in the underlying suit. Despite this difference between this case and the classic, first-party spoliation case, Superior argues the phrase "potential defendant" is broad enough to incorporate claims between codefendants and *Koplin* can be read to have contemplated such a situation. Furthermore, Superior suggests that the

*Koplin* court strongly implied we would recognize the breach of such a preservation duty as a first-party spoliation claim and would recognize a right to recover damages. See *Foster*, 809 F. Supp. at 838 (concluding that "[w]hile *Koplin* did not recognize the intentional tort of spoliation under the facts of that case, a fair reading of the case indicates that the tort would be adopted under certain factual scenarios").

We disagree with these arguments because statements in *Koplin* suggest otherwise. For example, when distinguishing *Smith v. Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (1984), and *Hazen v. Municipality of Anchorage*, 718 P.2d 456 (Alaska 1986), the *Koplin* court noted those cases related to "evidence [that] was destroyed by the *adverse party in pending litigation* to the direct benefit of such party." (Emphasis added.) *Koplin*, 241 Kan. at 212.

Nevertheless, Superior's arguments also suggest that even if the court in *Koplin* did not contemplate the situation presented in this case, we should now recognize an independent tort applicable in such circumstances. To further this argument, Superior contends it has a potential first-party spoliation claim because it might assert a cross-claim against the Defendants in underlying litigation, a third-party claim in underlying litigation, or a comparative implied indemnity claim in a collateral action. To illustrate that a comparative implied indemnity claim is a possibility, Superior cites *Blackburn, Inc. v. Harnischfeger Corp.*, 773 F. Supp. 296 (D. Kan. 1991).

*Blackburn* arose after an employee was injured by a defective crane and sued the crane's owner, his employer, and the crane's manufacturer. After the employer settled the claim with the employee, the owner sued the crane manufacturer based on a theory of comparative implied indemnity under *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980). The federal district court held that the employer could bring the comparative implied indemnity claim against the manufacturer. *Blackburn*, 773 F. Supp. at 299-300.

Superior contends it could have a similar claim against the Defendants. We note that because Superior's arguments suggest such a claim could be brought even if the Defendants were not named

as parties in an underlying suit, it raises issues of first impression. See *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 632, 637, 205 P.3d 1265 (2009) (reconciling one-action rule in context other than chain of distribution and concluding *Kennedy* must be read in the context of its factual situation, *i.e.*, chain of distribution/indemnification with all those in chain named as a party in underlying action). We need not sort out these issues, however. Instead, considering that we must accept the facts in the light most favorable to Superior, we will also accept the possibility of its asserted legal theories. In doing so, we note that any such claims based on these legal theories would arise because Superior and the Defendants are codefendants or potential codefendants/indemnitors. Accepting that a potential claim against the Defendants was foreseeable, we will consider Superior's suggestion that a preservation duty arises. To support the argument, Superior relies on several federal cases and also raises a policy argument.

A number of the federal decisions that Superior cites considered whether a court could impose discovery sanctions when a party had destroyed evidence at a time when the party "knew or should have known that the destroyed evidence was relevant to pending, imminent or reasonably foreseeable litigation." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 888-89 (S.D.N.Y. 1999); see also *John B. v. Goetz*, 531 F.3d 448, 458-59 (6th Cir. 2008) (discovery sanctions may be imposed for destruction of evidence if party has notice that the evidence is relevant to litigation); *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (same); *KCH Services, Inc. v. Vanaire, Inc.*, No. 05-777-C, 2009 WL 2216601, at *1-2 (W.D. Ky. 2009) (considering sanctions and appropriateness of adverse inference instruction when filing of suit gave notice that evidence was relevant). Suggesting a similar test applies, Superior argues the Defendants should have recognized that a claim against them was reasonably foreseeable.

In addition, Superior cites a case that did not deal with discovery sanctions, *Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104 (8th Cir. 1988), to suggest a duty arose. *Lewy* involved a direct appeal from a jury verdict in a products liability case. The appellate court

found error on an issue not relevant to our discussion, remanded the case for a new trial, and provided guidance to the trial court on an issue that arose because the defendant had destroyed records. That issue was whether the trial court erred in instructing the jury that " '[i]f a party fails to produce evidence which is under his ·control and reasonably available to him and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.' " *Lewy*, 836 F.2d at 1111 (quoting 3 Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions § 72.16 [4th ed. 1987]). On appeal, the defendant argued the instruction should not have been given because the evidence had been destroyed pursuant to a longstanding record retention policy. The appellate court determined it could not resolve the question on the record before it but opined that blind adherence to a retention schedule was not the only consideration when numerous consumer complaints had been filed regarding a product. The appellate court directed that on remand the trial court should "consider whether lawsuits concerning the complaint or related complaints have been filed, the frequency of such complaints, and the magnitude of the complaints" when deciding if it was appropriate to give the instruction. *Lewy*, 836 F.2d at 1112. Superior compares the number, frequency, and magnitude of the asbestos complaints and litigation to argue the Defendants should be held liable for damages for destroying the records.

We reject this argument because the cases are distinguishable from this case and the holdings advance different policy considerations from those that apply when considering if an independent tort should be recognized. Most significantly, these cases are distinguishable because they involve one party in a case seeking sanctions against an adverse party in the underlying litigation. Second, while the cases focus on actions taken while the spoliator was merely a potential defendant, in each case the spoliator became an actual defendant. Third, the party's duty to preserve records and the court's power to impose sanctions and other remedies in those cases arose primarily from the rules of civil procedure and from the court's inherent power to control litigation before it. See *Zu-*

*bulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). These sources relate to adverse parties in the underlying litigation and do not suggest a duty that can be the basis for an independent tort between codefendants or potential codefendants.

Moreover, Superior cites these cases for their definition of foreseeability. But we have accepted that it was foreseeable that the Defendants could be involved in litigation where the destroyed evidence would be relevant. Foreseeability is only one of the elements necessary to establish an independent tort of spoliation, however. This concept was explained by the Illinois Supreme Court:

> "As a general rule, there is no duty to preserve evidence. [Citation omitted.] However, . . . the existence of two elements will create a duty. First, a duty to preserve evidence may arise through an agreement, a contract, a statute, or another special circumstance, or where a defendant voluntarily assumes a duty by affirmative conduct. [Citation omitted.] This element is commonly referred to as the 'relationship prong.' [Citation omitted.] Once a plaintiff proves the relationship prong, the plaintiff must establish the 'foreseeability prong.' [Citation omitted.] That is, the plaintiff must demonstrate that a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action, and the pleadings must allege facts describing such circumstances. [Citation omitted.] In the absence of either the relationship or the foreseeability prong, there is no duty to preserve evidence. [Citation omitted.]" *Village of Roselle*, 368 Ill. App. 3d at 1113.

See *Glotzbach v. Froman*, 854 N.E.2d 337, 341 (Ind. 2006) (" 'Mere ownership of potential evidence, even with knowledge of its relevance to litigation, does not suffice to establish a duty to maintain such evidence.' ") This rationale melds well with our *Koplin* analysis, where this court did not focus on foreseeability but on the existence, or lack thereof, of a *duty* to preserve the evidence. See *Koplin*, 241 Kan. 206, Syl. ¶ 1.

In addition, the policy concerns raised in these federal cases are different from those considered in *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 212-15, 734 P.2d 1177 (1987), and by other courts deciding if an independent tort should be recognized. In fact, the availability of remedies—sanctions and an adverse evidentiary inference—in the underlying litigation is a factor that most courts have cited as a reason for not recognizing the independent

tort of first-party spoliation. For example, in *Cedars-Sinai Medical Center v. Superior Court*, 18 Cal. 4th 1, 17, 74 Cal. Rptr. 2d 248, 954 P.2d 511 (1998), the court stated these "remedies will in most cases be effective at ensuring that the issues in the underlying litigation are fairly decided." The court concluded that imposing these remedies in the underlying litigation was preferable to "opening up the decision on the merits of the underlying causes of action to speculative reconsideration regarding how the presence of the spoliated evidence might have changed the outcome." *Cedars-Sinai Medical Center*, 18 Cal. 4th at 17. Such an independent tort remedy, the court concluded, "would not only create a significant risk of erroneous findings of spoliation liability but would impair the fundamental interest in the finality of adjudication and the stability of judgments." *Cedars-Sinai Medical Center*, 18 Cal. 4th at 17.

One policy concern is common to both cases discussing an independent tort and those discussing remedies such as sanctions. That concern is punishing a party who has weakened the integrity of the truth-seeking process of litigation. Superior argues this policy compels recognition of an independent tort. It asserts this policy becomes a primary consideration in products liability types of cases. Relying on the holding in *Blackburn*, 773 F. Supp. 296, that comparative implied indemnity could apply to those in a product's chain of distribution, Superior emphasizes the goals of spreading risk in the context of products liability and of ensuring full recovery for injured plaintiffs. Superior argues these goals would not be advanced by allowing potential defendants to destroy evidence at the first sign of litigation. According to Superior, if this court does not recognize a spoliation tort under these circumstances, potential tort defendants will be encouraged to "make a mad dash [to] the nearest document shredder upon realizing their potential liability." Superior also fears that attorneys representing such potential tort defendants will be "encouraged to advise their clients to engage in that very same pursuit." In this vein, Superior asserts that notions of fairness and equity should provide a remedy for Superior whose interests suffered damages due to the "irresponsible and self-serving conduct" exhibited by the Defendants.

We do not disagree with the spirit of this argument. The Supreme Court of California explained it well when it stated:

"No one doubts that the intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." *Cedars-Sinai Medical Center*, 18 Cal. 4th at 8.

But in the very next sentence the court stated: "That alone, however, is not enough to justify creating tort liability for such conduct." *Cedars-Sinai Medical Center*, 18 Cal. 4th at 8. After weighing these concerns against the costs and burdens that would be imposed by recognizing an independent tort of spoliation, the California court held it would not recognize a tort remedy for the intentional destruction of evidence by a party to litigation when the spoliation was or should have been discovered before the conclusion of the litigation. *Cedars-Sinai Medical Center*, 18 Cal. 4th at 17-18.

The *Koplin* court similarly weighed the policy rationale of preserving evidence against the burdens caused by imposing a preservation duty on a third party and concluded that imposing a duty to preserve "all possible physical evidence" would be an "intolerable burden" on the right of a property owner. *Koplin*, 241 Kan. at 212. The same concerns arise in a case such as this where a claim is brought by one defendant in an underlying action against a potential codefendant in the underlying action.

In addition, the weight of authority is contrary to Superior's argument. Superior candidly concedes it has found no case in which a court has recognized an independent tort in an action between those who were codefendants or potential codefendants in an underlying action. On the other hand, some courts have refused to recognize the tort in these circumstances. For example, in *Timber Tech v. Home Ins. Co.*, 118 Nev. 630, 633, 55 P.3d 952 (2002), a subcontractor that had installed trusses for a ceiling, after settling with those injured when the roof collapsed, sued the contractor and others alleging spoliation because the ceiling debris had not

been preserved. The subcontractor argued it could not prove it was not responsible for the collapse because the debris was central to its defense. The Nevada court refused to recognize the independent tort of spoliation and also rejected a claim for negligence, concluding the contractor did not owe a duty to preserve the evidence. *Timber Tech*, 118 Nev. at 633-34. Similarly, in *Temple Community Hospital v. Superior Court*, 20 Cal. 4th 464, 466, 84 Cal. Rptr. 2d 852, 976 P.2d 223 (1999), the plaintiff, a patient who was severely burned during surgery when a medical device ignited flammable gases, sued the hospital for spoliation of evidence after her personal injury action against the device's manufacturer was unsuccessful because the hospital had destroyed the device and some records. The California Supreme Court refused to recognize a third-party spoliation claim related to the plaintiff's product liability action, even though the potential existed for claims against the hospital, albeit on a different theory of recovery, at the time it destroyed the evidence. *Temple Community Hospital*, 20 Cal. 4th at 469-78. These and other cases arose in situations where the spoliator was a potential codefendant; yet a duty to preserve the evidence was not recognized.

In treating the relationship of a potential defendant as a third-party spoliation situation, the California Supreme court in *Temple Community Hospital*, 20 Cal. 4th at 472-76, discussed many of the same policy considerations as were listed by this court in *Koplin* when it refused to recognize an independent tort of third-party spoliation. Many of these policy considerations were emphasized by the district court and by the Defendants.

For example, Defendants Stuerman and FK Company, in their appellate brief, emphasize that a codefendant relationship is unique and raises different policy concerns than those raised in other cases. They suggest that when someone who is not a party to litigation destroys potential evidence on its own initiative and that evidence has not been subpoenaed by the district court, "it requires massive degrees of speculation to conclude that a defendant [in the underlying lawsuit], who does not have the burden of proof, has suffered significant harm." The district court agreed with this point. We also agree that this consideration is valid, distin-

guishes this case from the others we have discussed, and raises the same or similar policy concerns to those discussed in *Koplin*.

Further, in Defendant Kimball's appellate brief he points out that in Superior's response in opposition to Kimball's motion and memorandum for summary judgment, Superior acknowledged that it possesses "some but not all of the purchase orders and invoices" containing the names of products purchased by Superior from the Defendants, the dates of purchase, and the quantities purchased. Superior has provided no explanation for why it does not have information about all of its orders with the Defendants, and we can imagine no legal or policy reason to impose a duty on the Defendants to preserve information that Superior could have preserved. In addition, the information about which products did or did not contain asbestos is potentially available from another codefendant, Plibrico. See *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267-68 (8th Cir. 1993) (considering plaintiffs' claims that the nonspoliating party was not prejudiced because there was ample evidence available for the defendant to use in defending against the design defect claim).

We note these points to underscore the difficulty of pinpointing the prejudice that might arise from the unavailability of evidence when that prejudice is assessed in a collateral proceeding between codefendants that created or had access to various records that would be used to defend a principal or underlying litigation. A defendant in the underlying litigation would not have the burden of proof, and it would be difficult, if not impossible, to assess the damages. Another policy issue that would arise if we were to recognize a tort between codefendants or potential codefendants, including those who could bring claims of comparative implied indemnity, is the possibility that parties on both sides of the underlying litigation—*i.e.*, the plaintiff and the spoliator's codefendant—may be injured by the spoliator's single act of destroying evidence, thereby giving rise to two claims with potentially inconsistent or duplicative verdicts. See *Temple Community Hospital*, 20 Cal. 4th at 478. Finally, we note that the policy concerns that led us to hold a duty did not arise because of a chain-of-product-distribution relationship would also be raised by recognizing an

independent tort between codefendants: (1) endless litigation would be generated; (2) rank speculation would be required as to (a) whether the evidence would have affected the underlying action, (b) whether the complaining party would have prevailed, and (c) the amount of damages that would have been recovered; (3) the scope of the duty would be limitless; and (4) there would be an unwarranted intrusion on the property rights of a person who lawfully disposes of his or her own property. See *Koplin*, 241 Kan. at 215.

Consequently, we conclude that an independent tort of spoliation will not be recognized in Kansas for claims by a defendant against codefendants or potential codefendants, including potential indemnitors under a theory of comparative implied indemnification.

Affirmed.

BILES, J., not participating.
PIERRON and LEBEN, JJ., assigned.