NOT DESIGNATED FOR PUBLICATION

Nos. 118,168
118,169

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of M.A.V. and T.D.V.,
Minor Children.

MEMORANDUM OPINION

Appeal from Osage District Court; PHILLIP M. FROMME, judge. Opinion filed April 6, 2018.
Affirmed.

*Jack J. Hobbs*, of Law Office of Jack J. Hobbs, of Ottawa, for appellant.

*Brandon L. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and BUSER, JJ.

PER CURIAM: This is an appeal of the district court's termination of Father's parental rights to T.D.V. and M.A.V. On appeal, Father contends there was insufficient substantial and compelling evidence to terminate his parental rights because he was an unfit parent. Finding no error in the termination order of the district court, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Father is the biological father of T.D.V., born in 2012, and M.A.V., born in 2014. Shortly after Mother gave birth to M.A.V., a drug screen of the umbilical cord detected the presence of amphetamine and methamphetamine. After notifying Mother of the results, the Department of Children and Families (DCF) was unable to make contact with Mother or Father. On January 14, 2014, the Shawnee County District Court placed

1

T.D.V. and M.A.V. in the temporary custody of DCF. On February 19, 2014, both children were adjudicated as children in need of care. Ultimately, venue was transferred to Osage County. On December 16, 2016, the State filed a motion for a finding of unfitness and termination of Father's parental rights. The district court held a termination hearing on April 17, 2017.

During the pendency of this case, Father was arrested multiple times and incarcerated. For example, in June 2015, he was arrested and remained in custody until December 2016. Upon his release, Father had two drug tests which detected methamphetamine use. In January 2017, he was arrested on several Shawnee County charges including possession with intent to distribute controlled substances, criminal possession of a firearm, and possession of stolen property. The charges were later dismissed, however, because the United States government filed federal criminal charges in lieu of the state charges. Because the state charges were filed while Father was on probation for prior criminal convictions in both Shawnee and Montgomery counties, both counties filed motions to revoke Father's probation. Additionally, at the time of the termination hearing, there was a federal hold or warrant for Father issued by federal authorities who were planning to take Father into custody at the conclusion of the state criminal litigation. As a consequence of this extensive criminal litigation, Father remained incarcerated at the time of the termination hearing.

At the termination hearing, the district court heard testimony from Anastasia Ramirez, permanency supervisor at KVC Behavioral Health (KVC), who was the acting supervisor on the case since March 21, 2016. Ramirez testified the original case plan goal was reintegration, and the case plan had been made available to Father. Ramirez told the court that Father had not met any case plan goals, which included obtaining safe, stable housing, and a legal source of income. She acknowledged that Father said he had completed a parenting class and a drug and alcohol assessment, but she had not received

2

any documentation confirming compliance. Parents are responsible for providing such documentation.

Ramirez testified that Father had complied with some case plan tasks when he was not incarcerated, such as visits with the children but he was not consistent. She testified that when Father was released from jail in December 2016, he made contact with KVC, and they met to go over the case plan again in February 2017. Father did obtain housing during that time, and he reported he had completed a drug and alcohol assessment in March 2017.

On the other hand, Ramirez testified that Father was currently incarcerated and had been incarcerated for the majority of the case. As a consequence, Father's visits with his children were inconsistent and infrequent, and he had not been a part of his children's lives for most of the past three years. Ramirez stated that Father could not carry out the case plan while he was incarcerated, and she was unaware of any release date after which Father could begin to work on his case plan tasks.

Ramirez reported that Father had failed to carry out a reasonable reintegration plan. She also felt there was not a substantial probability he would be able to do so in the near future. Ramirez recommended termination of Father's parental rights in order that the children could achieve permanency.

Jennifer Wolsley, the Fourth Judicial District executive director for CASA, testified that the district court had appointed CASA representation in the spring of 2016. She had met with Father once at the last case plan meeting in January 2017. Wolsley testified regarding Father's extensive criminal history and proceedings. She testified that Father was currently in the Shawnee County Detention Center, and his Shawnee County probation revocation hearing was set for June 2017.

3

Wolsley reported that while Father was not in custody, he completed two visits with his children but he was late to both visits. CASA requested a parenting evaluation but Father did not complete one. He did complete a drug and alcohol assessment, and he had completed substance abuse treatment while in custody. Upon his release from custody, Father was exploring further treatment options. During this time period, while submitting to drug testing by probation officials, some test results revealed the presence of methamphetamine. Father admitted to using the illegal drug. With regard to housing, Wolsley testified that Father had obtained housing but it had not yet been approved.

Wolsley testified that Father had failed to carry out a reasonable plan of reintegration, and she recommended that his parental rights should be terminated. Wolsley explained that M.A.V. had been in DCF custody since she was three days old, and the child had just turned four years old. She also noted that T.D.V. had temporarily been in DCF custody prior to the present case.

Father testified on his own behalf at the termination hearing. Father stated that after his children were taken into DFS custody in January 2014 he was very upset, started using drugs, and "hanging around with a bad crowd," which resulted in his legal troubles. Father explained that when he was arrested in June 2015 the children were almost ready to be reintegrated with him and were staying overnight with him five to six days a week.

Father told the court that after he was released from jail in December 2016 he completed his case plan tasks, inpatient drug treatment, and he was starting outpatient treatment. Father claimed he had obtained housing and a job. He completed a drug and alcohol assessment in January 2017. Previously, he had completed a parenting class in November 2014.

Father explained that he was not currently on probation in Montgomery County but was waiting to be sentenced to probation. Father was also aware that he faced the

possibility of federal charges. Although Father did not know when he would be released from custody, he believed that upon his release he could complete his case plan tasks in a short period of time. According to Father, he already had a home with his new wife. While that home had not yet been approved for placement, Father testified that only minor changes, such as obtaining appropriate bedding, were necessary.

Father admitted that his legal situation was a problem, and he accepted responsibility for it. Father explained that he was having difficulty because every time he was released from jail he would have to start over again. Father assured the district court that even though he had gotten into legal trouble, he was still a good parent. According to Father, he was trying to resolve all of his legal problems so he could obtain custody of his children.

As discussed more fully below, upon considering the evidence presented at the hearing, the district court terminated Father's parental rights. Father appeals.

It should be noted that at the time of the hearing Mother's whereabouts were unknown, and she had not contacted DCF or her children. At the conclusion of the hearing, Mother's parental rights were also terminated. She is not a party to this appeal.

SUFFICIENCY OF EVIDENCE TO SUPPORT TERMINATION OF PARENTAL RIGHTS

On appeal, Father raises one issue: "There is not substantial and compelling evidence in the record to support the District Court's finding of unfitness pursuant to K.S.A. 38-2271(a)(6)." The State counters: "The State provided sufficient evidence showing that the [F]ather is unfit, and likely to remain so for the foreseeable future, and that it is in the best interest of the children to terminate the [F]ather's rights."

Our standard of review provides:

"When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated. [Citation omitted.]." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The Revised Kansas Code for Care of Children (Code) allows a district court to terminate parental rights upon certain findings after a child has been adjudicated a child in need of care. K.S.A. 2017 Supp. 38-2269(a). The statute lists nonexclusive factors the court shall consider in making a determination of unfitness. K.S.A. 2017 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017 Supp. 38-2269(c). In addition, the court may apply one or more of 13 statutory presumptions of unfitness described in K.S.A. 2017 Supp. 38-2271.

Relevant to this appeal is K.S.A. 2017 Supp. 38-2271(a)(6). This statutory subsection creates a presumption that a parent is unfit

"by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:
. . . .
"(6)(A) the child has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the

6

parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the near future." K.S.A. 2017 Supp. 38-2271(a)(6).

When the State establishes a presumption of unfitness, the parent may overcome that presumption by showing by a preponderance of the evidence that he or she is a fit parent or will be a fit parent in the foreseeable future. *In re X.D.*, 51 Kan. App. 2d 71, 74-75, 340 P.3d 1230 (2014); K.S.A. 38-2271(b). A preponderance of the evidence means the evidence shows a fact is more probably true than not. *In re B.D.-Y.*, 286 Kan. at 691.

On appeal, Father does not argue that he rebutted the presumption of unfitness. As a result, he has waived and abandoned this argument. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Instead, Father challenges the sufficiency of the State's evidence to establish the presumption of unfitness.

In this case, the district court found clear and convincing evidence that Father was

"unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future. The finding is based on the following facts: Pursuant to K.S.A. 38-2271(a)[(6)] the child has been in [and] out-of-home placement, under court order for over three years and the parents have failed to carry out a reasonable plan, approved by the court, directed toward reintegration and there is a substantial probability that the parents will not carry out such plan in the near future. The [M]other's whereabouts are unknown. She has had no contact with the child and the agencies. The [F]ather is incarcerated and it is unknown when he will be released.

"Considering the physical, mental or emotional health of each child, termination of parental rights is in the best interests of each child named above and the physical, mental or emotional needs of each child would be best served by termination of parental rights. The parental rights of [Mother] and [Father] should be terminated."

On appeal, Father contends the State failed to produce substantial competent evidence to support the three prong application of the presumption in K.S.A. 2017 Supp. 38-2271(a)(6). As to the first prong, Father candidly concedes that T.D.V. and M.A.V. were in an out-of-home placement for more than two years. Father argues, however, that the State did not produce substantial competent evidence to support the other two prongs relating to his failure to carry out a reasonable reintegration plan or the substantial probability of carrying out the plan in the future.

In his brief, Father focuses exclusively on the testimony of Ramirez. He points out that she knew that Father reported completing some case plan tasks, but there was not any documentation. He contends this is not substantial competent evidence in the face of his testimony that he completed these tasks. Father essentially asks our court to reweigh the testimony of Ramirez and Father. But this is beyond our standard of review. See *In re B.D.-Y.*, 286 Kan. at 705.

While both Father and Wolsley provided some evidence that Father had completed some tasks, the evidence generally demonstrated that Father had not met the essential requirements of the reintegration plan. For example, at the time of the termination hearing, Father did not have a legal source of income. He had not obtained housing approved for the children or maintained regular visitation with the children. Of concern, while on probation in December 2016 and January 2017, Father failed drug tests. Most significantly, Father was incarcerated at the time of the termination hearing, and by his own admission had been incarcerated from June 2015 until December 2016 during the pendency of this case. Ramirez testified that Father could not complete a reintegration plan while he was in jail, and Father does not contest this obvious point.

The record also shows that Father would not be able to carry out a reasonable reintegration plan in the near future. Father highlights that one of his probation revocation hearings was set for June 2017 and if placed back on probation, he could be released as

early as two months after the termination hearing. Yet, assuming Father's probation was reinstated in one county, he still faced probation revocation proceedings in another Kansas county before having to answer to federal charges. This testimony is highly speculative. The Code requires courts to recognize that children experience the passage of time differently than adults. K.S.A. 2017 Supp. 38-2201(b)(4). In this case, Father's two children were both under the age of six and had already been in DCF custody for most of their lives. Father's uncertain testimony in this regard did not support his assertion that he would be able to carry out a reasonable reintegration plan in the near future.

In order to terminate parental rights under a presumption of unfitness, the district court must also find that the parent will not become fit and able to care for the child in the foreseeable future. K.S.A. 2017 Supp. 38-2271(b). Similar to the discussion of the second prong, the court examines the term "foreseeable future" from the perspective of a child. *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Children and adults have different perceptions of time, and a child has the right to permanency within a time frame that is reasonable to them. 50 Kan. App. 2d at 1170.

As discussed earlier, T.D.V. and M.A.V. had been in DCF custody for over three years. T.D.V. was almost two at the beginning of this case, and M.A.V. was only three days old. Both children had spent the majority of their lives in DCF custody while during the pendency of this litigation, Father had spent at least a year and a half incarcerated. In short, there was substantial competent evidence to show that Father will not become fit and able to care for his children in the foreseeable future.

Finally, the district court found it was in the best interests of the children to terminate Father's parental rights. Father does not challenge this finding on appeal, so he has waived and abandoned any argument on this issue. *Kimball*, 292 Kan. at 889. Nevertheless, the record indicates the district court did not abuse its discretion in making

this finding. *In re K.P.*, 44 Kan. App. 2d 316, 318, 235 P.3d 1255 (2010) (best interest finding reviewed for abuse of discretion). T.D.V. and M.A.V. were in need of a permanent home apart from DCF custody. At the time of the termination hearing, both children were doing well in their current placements.

Upon our independent review of all the evidence presented at the termination hearing, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, i.e., by clear and convincing evidence, that Father was an unfit parent and his parental rights should be terminated. Accordingly, the district court's judgment is affirmed.

Affirmed.