NOT DESIGNATED FOR PUBLICATION

No. 114,602

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
F.G.
Year of Birth: 1998, a Female,
H.G.
Year of Birth: 1999, a Female,
O.G.
Year of Birth: 2004, a Female,
T.G
Year of Birth: 2007, a Male.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed August 12, 2016.
Affirmed.

*Kerrie Lonard*, *Paul Klepper*, and *Erin Besson*, of Kansas Legal Services, for appellant.

*Patrick J. Hurley*, assistant district attorney, and *Charles E. Branson*, district attorney, for
appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

*Per Curiam*: D.G. (Mother) appeals the termination of her parental rights to F.G.,
H.G., O.G., and T.G. (the Children), claiming the evidence was insufficient to support
termination of her rights. Mother's parental rights were terminated based on the
presumption she was unfit because she had two or more convictions for crimes placing
her children in danger pursuant to K.S.A. 2015 Supp. 38-2271(a)(2). Mother also alleges
her trial counsel provided ineffective assistance of counsel. We find Mother failed to
rebut the presumption of unfitness pursuant to K.S.A. 2015 Supp. 38-2271(a)(2), and
there was clear and convincing evidence to support termination of Mother's rights. We

1

also find Mother's trial counsel provided constitutionally sufficient assistance of counsel. We affirm.

FACTS

The Children are the biological children of A.G. (Father) and Mother. Although Father also appealed, his appeal was dismissed because he did not file a docketing statement. During the pendency of the appeal, F.G. reached the age of majority. Although F.G. has reached the age of majority, we will address the Mother's appeal claiming the district court erred in terminating her parental rights to all of her Children.

The Children were adjudicated children in need of care (CINC) following a child-welfare check at a Walmart parking lot on June 15, 2012. The family was traveling from Illinois to Arizona when they stopped at Walmart in Lawrence. Outside the vehicle, T.G., then not quite 5 years old, and O.G., then 7 years old, were found blindfolded and bound with duct tape. Mother was found inside the store with a shopping cart containing two rolls of duct tape, two tarps, and a softball bat. Once Father was in custody, he told police the family left Illinois because the world was coming to an end and their family home was possessed by demons. He also told police T.G. and O.G. were bound and blindfolded because they were possessed by demons.

Pursuant to plea negotiations, Mother pleaded no contest to three misdemeanor counts of endangering a child. She spent approximately 6 months in jail. Mother's criminal history reflects a previous Illinois conviction for endangering the health or life of a child. Father was also convicted and sentenced on three misdemeanor counts of endangering a child and two counts of felony child abuse.

The State filed a motion for termination of parental rights on October 14, 2014. In addition to the statutory factors in K.S.A. 2015 Supp. 38-2269, the motion indicated Mother was presumed unfit pursuant to K.S.A. 2015 Supp. 38-2271(a)(2) since she had

2

three Kansas convictions for endangering a child pursuant to K.S.A. 2015 Supp. 21-5601 and a conviction for a comparable crime under the laws of another jurisdiction.

Immediately prior to the start of trial on February 11, 2015, Mother's counsel, Juanita Carlson, filed a motion for continuance or bifurcated trial, stating, in part:

> "Finally, this attorney will be subject to an ineffective assistance of counsel claim by the mother if a bifurcated hearing is not granted. This attorney had a death in the family in late December, 2014, was ill for a week in January 2015 and has had around 60 hearings since January 1, 2015 to this date in February, 2015, making it near impossible with a caseload of over 100 court appointed cases of various types to service these cases, including preparation for this proceeding. The [S]tate has had the benefit of office staff and a competent intern to cover her cases over the last two weeks while preparing, while this attorney has no resources, a clear unlevel playing field."

Carlson also raised a similar argument when arguing the motion to continue. The district court denied the motion to continue. The district court also took judicial notice of Mother and Father's Douglas County criminal cases for endangering a child and abuse of a child. Finally, over Mother's objection, the district court admitted a certified copy of the docket sheet from Mother's Illinois case for endangering the life of a child.

H.G.'s therapist, Walt Louis, testified he did not believe reintegration was a viable option. He also indicated H.G. did not want reintegration. Following Louis' testimony, Carlson asked Louis not be excused but the district court denied her request. Carlson indicated she was going to excuse herself to speak with Louis and, when the district court informed her it was going to continue with the trial, Carlson responded, "I understand." The record does not indicate Carlson left the proceedings.

The therapists for T.G. and O.G. also testified. T.G.'s therapist testified Mother exhibited excellent parenting skills when Mother was working one-on-one with T.G. but was concerned Mother could not multitask or meet T.G.'s needs and the needs of his

3

other siblings at the same time. She also believed T.G. needed permanency and continuing the case would be detrimental to him. O.G.'s therapist testified O.G. felt unsafe with Mother and wanted Mother to earn her trust. She also believed O.G. needed permanency and was concerned Mother did not understand O.G.'s emotional needs.

Christina Maki, the case manager from June 2012 to July 2013, testified Mother moved to Arizona where she had family and a support system after she was released from jail. The Children initially remained in Kansas. H.G. eventually moved to Arizona to stay with a relative, but the other three children stayed in Kansas.

Sagan Smith, the case manager from August 2013 to January 2014, indicated Mother completed many of the case plan's expectations to Smith's satisfaction while in Arizona. Mother returned to Kansas on a monthly basis for supervised parenting time with T.G. and O.G.

Eric Sader, the case manager from January 2014 to December 2014, testified Mother moved back to Kansas in April or May of 2014. He felt Mother would benefit from additional parenting training because she struggled to demonstrate what she had learned about parenting and meeting the needs of the Children. Mother was employed to Sader's satisfaction, and she substantially complied with visitation. H.G. returned to Kansas some time in 2014.

H.G.'s foster mother, K.T., testified about H.G.'s time in Arizona and how H.G. had changed when she came back to Kansas. K.T. testified H.G. had suicidal ideations and had been engaging in self-harm while in Arizona. K.T. indicated H.G. was conflicted about Mother, and H.G. held Mother 30-to-40% responsible for everything that had happened in their lives. K.T. believed H.G. also engaged in self-harm after a visit with Mother and testified H.G. did not want to be reintegrated with either parent.

4

T.G. and O.G.'s foster mother, C.B., testified. She testified about Mother's lack of consistent phone calls from Arizona to T.G. and O.G. at the scheduled times, claiming she forgot or had something else to do. After the Mother moved back to Kansas, C.B. began supervising some of the visits. However, she stopped supervising visitations because Mother "could never tell the kids no to anything." Likewise, C.B. was also concerned Mother was unable to console T.G. or O.G. when appropriate and Mother appeared more like a bystander than a parent utilizing her parental skills to help the Children. C.B. believed many of T.G.'s behavioral issues were directly related to his contact with Mother and he would regress after visits with Mother. Additionally, C.B. was troubled because Mother told her she was living out of her car during the fall of 2014.

Monica Luedtke, a permanency supervisor, indicated Mother was proactive about getting services in Arizona and in Wichita. Luedtke was concerned Mother had not progressed to extended or unsupervised visits with the children after 3 years of involvement in the parenting programs. Luedtke was also concerned Mother could not provide the day-to-day care for the Children because of her own mental health needs in addition to the mental health needs of the Children. Luedtke also noted Mother did not take any responsibility for what happened to the children or acknowledge her wrongful acts to them.

After the State finished presenting its evidence, the district court heard arguments on the State's request the district court apply the presumption Mother and Father were unfit. Father's counsel acknowledged the presumption applied. On Mother's behalf, Carlson stated: "Your Honor, frankly, I didn't have time to even check into the issue during the noon hour. I was preparing for a 1:00 juvenile case." Carlson then argued against the application of the presumption. The district court found the presumption of K.S.A. 2015 Supp. 38-2271(a)(2)—Mother had twice been convicted of a crime where her children were harmed or endangered—applied and operated under K.S.A. 60-414(a) (burden of proving nonexistence of the presumed fact is on the party against whom the

presumption operates). The district court also determined the presumption applied pursuant to K.S.A. 2015 Supp. 38-2271(a)(6)(A), but that presumption was governed by K.S.A. 60-414(b) (presumption ceases to exist when evidence is introduced which supports a finding of nonexistence of the presumed fact).

Mother testified extensively on her own behalf. Prior to beginning her direct examination of Mother, Carlson stated: "And I do apologize to everyone for—if my questions seem to be jumping all over the place. My opportunity to organize was cut short, so it is what it is." Mother identified the places she lived since she married Father. She discussed obtaining a protection from stalking order against an individual while living in Wichita, which showed her ability to take action when there is a perceived danger. She discussed the individual therapy and domestic violence groups she attended while she lived in Arizona and indicated she had maintained employment since she was released from jail and had stable housing. Mother testified about her compliance with the reintegration plan and her willingness to continue working toward reintegration. She divorced Father in April 2013.

Mother also testified regarding the Walmart incident. She indicated she did not call police when she went into Walmart because she saw a police car driving up to their vehicle on her way into the store. On cross-examination, when asked what part of the Walmart incident was her fault, Mother replied, "I was with my husband."

At the close of evidence on March 13, 2015, the district court took the matter under advisement. The district court then asked if counsel wanted time to submit findings of fact. However, no one indicated a desire to submit findings of fact.

On August 10, 2015, the district court filed its decision finding Mother was presumed unfit because she had been twice convicted of "a crime specified in article 56 of chapter 21 of the Kansas Statutes Annotated or comparable offenses under the laws of another jurisdiction." It also found Mother failed to rebut the presumption by a

6

preponderance of the evidence. Since Mother had not proved she was presently fit and able to care for the Children or that she would be fit and able in the foreseeable future, Mother's rights were terminated.

The district court alternatively relied on the factors listed in K.S.A. 2015 Supp. 38-2269 to terminate Mother's parental rights. The only statutory factor specifically identified in the district court's ruling is the failure of reasonable efforts to facilitate reintegration. In her opinion, however, the district judge did cite to evidence and reached conclusions related to the statutory factor for the failure of a parent to adjust his or her circumstances, conduct, or conditions to meet the needs of the Children. K.S.A. 2015 Supp. 38-2269(b)(8). The district court found termination of parental rights was in the best interests of the Children and terminated Mother's parental rights. Mother timely appealed.

After the district court's decision, Mother sent the district court a letter requesting the appointment of different appellate counsel. In her letter, Mother contended Carlson failed to file a requested motion, provided Mother little preparation for court, did not notify Mother of the decision terminating Mother's rights for 2 days, had an incorrect name on paperwork, and did not communicate when family therapy sessions would end. Carlson subsequently filed a motion to withdraw as counsel. The district court granted the motion to withdraw and appointed new appellate counsel.

ANALYSIS

The State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2015 Supp. 38-2250. In addition to child in need of care adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2015 Supp. 38-2269(a).

"[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most

7

favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008);

See *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011) (applying standard of review). In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

On appeal, Mother argues the trial court erred when it found she did not rebut the presumption by a preponderance of the evidence. Mother asserts she carried out her case plan and was able to carry it out in the future. The State argues the district court correctly applied the presumption and Mother failed to present evidence she was presently able to care for the Children.

Citing much of her testimony, Mother contends she presented evidence regarding her ability and willingness to comply with the reintegration case plan. She argues this rebuts the presumption she was unfit pursuant to K.S.A. 2015 Supp. 38-2271(a)(6) which states:

> "[A] parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:
> "(6)(A) the child has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the near future."

However, the district court did not find Mother was unfit pursuant to K.S.A. 2015 Supp. 38-2271(a)(6), it found her unfit pursuant to K.S.A. 2015 Supp. 38-2271(a)(2), which states:

"[A] parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:

> (2)  a parent has twice before been convicted of a crime specified in . . . articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated . . . or comparable offenses under the laws of another jurisdiction."

By the time of the hearing, Mother had been convicted of four crimes qualifying under K.S.A. 2015 Supp. 38-2271(a)(2): an Illinois conviction for endangering the life of a child and three Kansas convictions for endangering a child. The district court used the presumption Mother was unfit and determined the convictions were probative to find she was currently unfit. Pursuant to K.S.A. 60-414(a), Mother had to establish the non-existence of the presumed fact:

"[I]f the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates."

Additionally, K.S.A. 2015 Supp. 38-2271(b) states:

"The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in proceedings pursuant to K.S.A. 2015 Supp. 38-2266 *et seq*., and amendments thereto."

Mother does not argue she proved she was presently fit and able to care for the Children or will be fit and able to care for the Children in the foreseeable future. An issue not briefed by the appellant is deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Since Mother has not briefed whether the district court erred when it determined she was not fit and able to care for the Children—now or in the foreseeable future—she abandoned the argument.

9

Mother also argues the district court erred when it found she was unfit pursuant to K.S.A. 2015 Supp. 38-2269. Since Mother failed to challenge the validity of the district court's K.S.A. 2015 Supp. 38-2271(a)(2) presumption of unfitness, we deem it unnecessary to address whether the district court erred when it found Mother was unfit pursuant to K.S.A. 2015 Supp. 38-2269. When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of each alternative basis on appeal, an appellate court may decline to address the appellant's challenge to the district court's ruling. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010). However, even if we addressed it, we would find the district court's finding of unfitness was supported by clear and convincing evidence Mother was unfit.

There is clear and convincing evidence Mother was not presently fit and able to care for the Children and would not be able to care for the Children in the foreseeable future. Despite the length of the case, Mother still only had supervised visitation with T.G. and O.G. During family therapy with Mother, T.G.'s therapist still had to model appropriate behavior and initiate redirection of T.G. when he got off task. O.G. still felt "a little unsafe" with her Mother and felt Mother had not earned her trust. O.G.'s therapist also indicated Mother did not understand O.G.'s emotional needs and could not say when Mother would begin to understand O.G.'s needs. In addition, H.G. has indicated she does not wish to reintegrate with Mother. With the passage of time, F.G. has reached the age of majority and should be free to decide what involvement she wants with Mother. Viewed in the light most favorable to the State, a rational factfinder could find it highly probable Mother was unfit to parent her Children and her parental rights should be terminated.

When the district court finds a parent unfit, it must consider whether termination of parental rights is in the best interests of the child, giving "primary consideration to the physical, mental and emotional health of the child." K.S.A. 2015 Supp. 38-2269(g)(1). Since the district court is in the best position to make findings on the best interests of the

10

child, its judgment will not be disturbed in the absence of an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

The district court provided detailed, specific reasons for terminating parental rights to each of the Children based on the trial testimony of all the witnesses. Further, F.G. and H.G. were no longer interested in reintegration. H.G. was opposed to working with her counselor and Mother to achieve reintegration. The decision to terminate parental rights was not arbitrary, fanciful, or unreasonable, and the district court did not abuse its discretion when it found termination of parental rights was in the best interests of the Children.

*Mother's trial counsel provided effective assistance of counsel.*

Though it is typically found in a criminal context, ineffective assistance of counsel is applicable to termination of parental rights hearings. See *In re Rushing*, 9 Kan. App. 2d 541, Syl. ¶ 3, 684 P.2d 445 (1984). However, ineffective assistance of counsel claims are not generally considered for the first time on appeal. *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014).

> "[G]enerally the factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). [Citation omitted.]" *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012).

Only under extraordinary circumstances will an appellate court consider a claim of ineffective assistance of counsel for the first time on appeal, *i.e.,* where there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a

11

matter of law based upon the appellate record. *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2010).

A panel of this court recently addressed the applicability of *Van Cleave* to termination proceedings:

"It is unclear as to whether the *Van Cleave* remand is applicable to termination proceedings. There are no reported cases dealing with the matter. However, in *In re J. W.*, No. 106,561, 2012 WL 2621154, at *3-6 (Kan. App. 2012) (unpublished opinion), a panel of this court, while noting that it was unclear as to whether the *Van Cleave* procedure applied, did conduct the analysis to determine whether a remand was necessary. Therefore, an analysis of the ineffective assistance of counsel claim is in order.

"To establish an ineffective assistance of counsel claim, the appellant must show that (1) counsel's performance was constitutionally deficient, that is a showing that counsel made errors so serious that the performance was less than that guaranteed by the Sixth Amendment to the United States Constitution, and (2) that counsel's deficient performance prejudiced the defendant, resulting in errors so severe that the defendant was deprived a fair trial. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). However, scrutiny of a counsel's performance is highly deferential and this court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014)." *In re A.B.*, No. 111,483, 2015 WL 249768, at *7 (Kan. App. 2015) (unpublished opinion).

Mother contends her ineffective assistance of counsel claim is not being raised for the first time on appeal because it was addressed in a motion for continuance. In the motion, Carlson stated:

"Finally, this attorney will be subject to an ineffective assistance of counsel claim by the mother if a bifurcated hearing is not granted. This attorney had a death in the family in late December, 2014, was ill for a week in January 2015 and has had around 60 hearings since January 1, 2015 to this date in February, 2015, making it near impossible with a caseload of over 100 court appointed cases of various types to service these cases, including preparation for this proceeding. The [S]tate has had the benefit of office staff

and a competent intern to cover her cases over the last two weeks while preparing, while this attorney has no resources, a clear unlevel playing field."

Carlson raised a similar argument when arguing the motion to continue. The State argues Mother did not raise an ineffective assistance of counsel claim before the district court, Carlson did. The State asserts Mother raises ineffective assistance of counsel for the first time on appeal.

The State has the better argument. In the motion to continue, Carlson requested a continuance or a bifurcation of the trial and suggested a new trial date of March 9, 2015. Though the district court denied the motion, due to the pace of the trial, Mother essentially received a bifurcated trial. The State presented evidence on February 11-13, March 10, and March 12, 2015. Mother presented evidence on March 12-13, 2015.

Further, although Mother sent a letter to the district court requesting a new attorney handle her appeal because she felt Carlson was not representing her as well as Carlson should have, the letter does not raise the issues presented on appeal.

In both *In re A.B.*, 2015 WL 249768, at *9, and *In re J. W.*, No. 106,561, 2012 WL 2621154, at *6 (Kan. App. 2012) (unpublished opinion), the panels conducted an analysis of the appellant's ineffective assistance of counsel claims and determined remand for a *Van Cleave* hearing was unnecessary. Here, an analysis of Mother's ineffective assistance of counsel claims also indicates remand is unnecessary because the record shows Carlson was not ineffective.

On appeal, Mother claims she had ineffective assistance of counsel because Carlson was unprepared for trial and did not know the rules of evidence. Mother argues multiple instances where Carlson provided ineffective assistance of counsel:

13

- Carlson admitted on the record that she was unprepared for trial;

- Carlson asked to leave the courtroom even after the district court informed trial counsel the hearing would proceed;

- Carlson was unable to respond to an objection to the foundation of a witness' testimony;

- Carlson failed to object to hearsay;

- Carlson "openly admitted to failing to know the proper argument during an objection";

- Carlson failed to challenge findings of presumptive unfitness;

- Carlson failed to prepare an examination outline; and

- Carlson failed to submit proposed findings of facts.

We will proceed to address each of these claims and why they lack merit.

*Counsel admitted on the record she was unprepared for trial.*

"And then I am also concerned that my client may raise an ineffective assistance of counsel claim against me as her attorney, due to the fact that I had a death in the family in December. I was ill in January and I have had numerous caseload duties that have kept me from being on top of all the required tasks that we had set out in a meeting in November for both of us to do in preparation for this proceeding. And which I have not been able to accomplish."

The record reflects Mother's counsel made this request at the time she was asking for the trial to be continued as a reason for the district court to grant the continuance. Our review of the entire record reflects Mother's counsel was prepared for the trial, and in light of the fact the trial actually took place over multiple days spanning multiple weeks from February 11, 2015, to March 13, 2015, Mother's counsel was prepared and had time to prepare as the trial progressed toward completion.

14

*Counsel asked to leave the courtroom as the hearing continued.*

Mother's second point of ineffective assistance of counsel reflects: "Counsel's request alone to leave the courtroom mid proceedings is indicative of Counsel's insufficient knowledge as to the facts of the case, preparation, and trial performance." Mother's argument is meritless. After H.G.'s therapist testified, Carlson requested he not be excused. When the district court denied Carlson's request, she stated: "Then I'm going to excuse myself to talk with him briefly." After the district court informed her the trial would continue, Carlson responded, "I understand." The transcript does not indicate Carlson actually left the proceedings. Further, the transcript reflects Carlson objected less than two pages later, before the next witness provided any substantive testimony.

In addition, during the hearing on Mother's request for new appellate counsel, neither Mother nor the district court indicated Carlson left the proceedings. If Carlson had left the proceedings, it surely would have been noted during that hearing. On its face, the record does not support Carlson was not constitutionally deficient for leaving the proceedings since the record does not reflect Carlson actually left the proceedings.

*Counsel was unable to respond to an objection to the foundation of a witness' testimony.*

Mother asserts Carlson's inability to respond to an objection during Officer James Miller's testimony was evidence of her lack of preparation and insufficient knowledge of the rules of evidence. When the district court asked Carlson if she had a response to the State's renewed objection as to foundation, Carlson responded: "I'm thinking of one, and I can't. So I will let it go." Mother simply concludes the failure to respond to the State's objection "shows a lack of knowledge and preparation"; she does not explain how the failure to respond to one objection in a multi-day trial shows a lack of knowledge of the rules of evidence or a lack of preparation. However, even if this failure somehow reflects one instance of ineffective assistance of counsel, as will be discussed later, Mother has not shown she was prejudiced.

15

*Counsel failed to object to hearsay.*

Mother next alleges she received ineffective assistance of counsel because Carlson failed to object to testimony from H.G.'s foster mother on hearsay grounds or point out that the testimony was speculative. H.G.'s foster mother testified:

> "Prior to leaving, she laughed easily and just was more interested in things going on around her. And she read a lot and she had interests. But when she came back, she didn't have any interests. She would sit for long periods and just frantically kind of write in her journal, and she wouldn't—she didn't want to read books anymore, she didn't want to have friends, she didn't want to do anything."

However, this argument is meritless because Mother waived hearsay as to the Children:

> "Your Honor, during the noon hour, I had the opportunity to review some of the therapy record, enough to get a sense, I guess. And in speaking with my client, we have no problem with the children being—we would therefore waive any hearsay requirements in terms of the children not being present."

Since Mother waived hearsay as to the Children, the failure to object to H.G.'s foster mother's testimony as hearsay does not support Mother's ineffective assistance of counsel claim. Additionally, we note this testimony generally indicated what the foster mother observed about the child's actions and demeanor, not what H.G. said. Observations are not hearsay. See *State v. Mays*, 277 Kan. 359, 384, 85 P.3d 1208 (2004) (testimony of visual observations was not hearsay).

*Counsel openly admitted she did not know the proper argument during an objection.*

For further proof Carlson was ineffective, Mother points to an objection where Carlson acknowledged she did not know the "proper argument" for the objection. The

16

objection occurred during the guardian ad litem's questioning of O.G.'s foster mother, C.B.:

> "[C.B.:] Yes, it is. And there was an incident at a ballgame where I didn't feel like that she consoled [O.G.] either.
>
> "[Guardian ad litem:] How would you describe this inability to do the things that I've indicated?
>
> "MS. CARLSON: Objection, Your Honor. I think his characterization—I'd object to it as—I can't even think of the legal objection, but (inaudible).
>
> "THE COURT: The witness said that the mother is having —this witness has observed the mother being unable to console her children. I don't know that [the Guardian ad litem] has gone beyond that or exaggerated that, so the objection is overruled."

In context, Carlson was clearly objecting to the mischaracterization of the witness' testimony. Although Carlson did not use the proper legal term for the objection, the district court ruled on the merits of her objection. In addition, Carlson objected frequently over the course of a 5-day trial. Her failure to use the proper legal term for the objection in this instance does not indicate Carlson was unfamiliar with the rules of evidence; likewise, one evidentiary objection misstep during a multi-day trial is not proof Carlson provided ineffective assistance of counsel.

*Counsel failed to challenge findings of presumptive unfitness.*

Mother suggests Carlson was ineffective because she was unprepared to argue against the presumption of unfitness. Though Carlson admitted she was unprepared to argue against the presumption of unfitness, she did argue against its application. A parent is presumed unfit if the State establishes by clear and convincing evidence "a parent has twice before been convicted of a crime specified in . . . articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, . . . or comparable offenses under the laws of another jurisdiction." K.S.A. 2015 Supp. 38-2271(a)(2). The district court had already taken judicial notice of Mother's prior Douglas County case reflecting three convictions for child endangerment of her Children. Similarly, the docket sheet from Mother's Illinois

17

case was previously admitted (over Carlson's objection). Mother has not indicated how the outcome would have changed had Carlson in some way been better prepared to argue against the statutory presumption of unfitness. The convictions were relevant to the issues of the case. They reflected Mother's prior parenting choices actually resulting in criminal convictions.

*Counsel failed to prepare an examination outline.*

Mother argues Carlson was unprepared because she did not prepare an examination outline or prepare Mother for trial. The sole evidence Mother cites supporting her allegation is Carlson's apology at the beginning of her direct examination of Mother: "And I do apologize to everyone for—if my questions seem to be jumping all over the place. My opportunity to organize was cut short, so it is what it is." However, this statement does not support Mother's claim; Carlson did not say she had not prepared an outline or failed to prepare Mother for trial. Instead, the statement merely indicates Carlson had less time to prepare than she would have liked. Mother testified extensively on her own behalf. Furthermore, Carlson's questions and Mother's testimony logically flowed from topic to topic. Carlson's trial disclosure does not suggest and the record does not reflect she provided ineffective assistance of counsel.

*Counsel failed to submit proposed findings of facts.*

Mother's last argument points to Carlson's response to the district court indicating she did not want to do findings of fact for the district court to consider as the matter was taken under advisement. Once again, Mother takes Carlson's response out of context— and truncates it— to support her point.

The district court asked all counsel if they would like to submit findings of fact while it took the matter under advisement. The district attorney asked if the court was requiring findings of fact; the district court said it was not *requesting* findings of fact, but

was offering counsel the opportunity to submit findings. None of the other attorneys indicated they wanted to submit findings of fact. Carlson responded:

> "Your Honor, I think because of the length of the proceeding, it's almost—we would almost have to have a transcript ahead of time, and I don't think it's something I want to put the effort into. And there may be other—an appeal that would be where we want to put the money in the case.
> "But I would request the court, concerning what—whether or not the orders that are in place should remain in place as far as services to the children and to the mother."

Mother fails to indicate why Carlson's response is evidence of ineffective assistance of counsel or explain how the failure to submit proposed findings of fact prejudiced her in any way.

### *Mother has not shown prejudice.*

Mother has not shown Carlson was deficient under the totality of the circumstances. Even if she had shown Carlson was deficient, Mother cannot show she was prejudiced by the deficient performance. To establish prejudice, Mother must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *Miller*, 298 Kan. at 934. Mother's discussion of the prejudice prong under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984), is essentially one sentence long: "Had Trial Counsel adequately prepared her client as a witness and prepared for the trial itself she would have demonstrated that the State of Kansas was unable to meet the relevant burden of proof." This contention ignores the overwhelming evidence given the statutory presumption of unfitness and all the other evidence reflecting Mother's inability to care for the Children now or in the foreseeable future. Mother has not shown prejudice because she has not demonstrated the outcome of the

proceeding would have been different. Carlson's representation of Mother may not have been perfect, but it did not rise to the level of ineffective assistance of counsel.

CONCLUSION

When all of the evidence is considered in the light most favorable to the State, including the presumption pursuant to K.S.A. 2015 Supp. 38-2271(a)(2), the district court did not err in finding the Mother's parental rights should be terminated. Likewise, Mother's claim her trial counsel was ineffective lacks merit based on our review of the entire record. We affirm.

Affirmed.