NOT DESIGNATED FOR PUBLICATION

No. 117,522

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARTIN MENDOZA-HERNANDEZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Haskell District Court; BRADLEY E. AMBROSIER, judge. Opinion filed April 27, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: A prisoner has one year from when a conviction becomes final to file a habeas corpus motion. K.S.A. 2017 Supp. 60-1507(f)(1). The one-year time limitation for bringing an action may be extended by the district court only to prevent manifest injustice. K.S.A. 2017 Supp. 60-1507(f)(2). Martin Mendoza-Hernandez (Hernandez) filed a habeas corpus motion four years after his underlying conviction was final. After a preliminary hearing, the district court dismissed the motion on two grounds. First, that the hearing was untimely and, second, that even if the motion was timely, the claims that Hernandez made did not warrant a full evidentiary hearing nor entitle him to

1

relief. Because we find that the motion was untimely and Hernandez fails to establish that manifest injustice will result if he is not allowed to proceed, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In August 2011, Hernandez was charged with three counts of rape. Counsel for Hernandez entered his appearance and filed a motion for discovery.

In December 2011, the case was scheduled for a waiver of preliminary hearing. Christina Pennington served as an interpreter for the hearing. The State had no objection to Pennington serving as interpreter. The court questioned Pennington about whether she was qualified to interpret in the following colloquy.

> "THE COURT: Ms. Pennington, are you fluent in both the languages of English and Spanish?
> "THE INTERPRETER: I'm partially, yes.
> "THE COURT: Partially in what language?
> "THE INTERPRETER: In both.
> "THE COURT: So you're as proficient in Spanish as you are in English?
> "THE INTERPRETER: For the most part, yes.
> "THE COURT: Have you interpreted before?
> "THE INTERPRETER: Not in a courtroom, no.
> "THE COURT: But in other settings?
> "THE INTERPRETER: Just in the office, yeah.
> "THE COURT: And you work in a law office; is that correct?
> "THE INTERPRETER: Yes.
> "THE COURT: And how long have you been interpreting in the law office?
> "THE INTERPRETER: Almost two years."

Pennington then swore under oath to interpret the case. The court asked if counsel was satisfied with Pennington interpreting. The State and counsel for Hernandez stated they

2

were. After being informed of his rights to a preliminary hearing Hernandez agreed to waive his preliminary hearing.

The parties informed the court that Hernandez would be entering a no contest plea to two counts of rape, with the remaining count to be dismissed. The court informed Hernandez of his rights. Hernandez responded in English during the explanation of his rights by stating "Okay" two times. The court asked Hernandez if he understood his rights. Hernandez responded, in English, that he did. When asked about the circumstances surrounding the plea deal, Hernandez indicated that no additional promises were made and that he was not threatened into agreeing to plea no contest.

The court also informed Hernandez that he would be giving up certain appellate rights, and that "as long as [the court] sentence[s] you in accordance with the laws of Kansas, you have no right to appeal your sentence." Hernandez, through the interpreter, clarified that once a decision was made he could not "fight the court anymore."

The court also inquired into Hernandez' mental state, asking, "[I]s your mind clear this morning? Do you understand what we're doing here?" Hernandez replied, through the interpreter, that "he understands, but he forgets a lot of things." The court asked whether he understood what had been discussed so far. Hernandez responded, in English, "Yes." He also responded, through the interpreter, that he understood but that he might not remember later that day.

Hernandez pled no contest to two counts of rape. The State gave the factual basis for the plea stating that if the case had gone to trial the evidence would show that Hernandez had sexual intercourse with M.C., who 10 years old at the time, and that Hernandez impregnated M.C. DNA evidence from tests on Hernandez, the fetus, and M.C., indicated that Hernandez was a 99.999 percent probability to be the father of the fetus. Evidence would have also shown that Hernandez forced A.E. to have sexual

intercourse with him while A.E. was overcome by force or fear. We note that at the time of both incidents, Hernandez was 46 years old.

The court found Hernandez mentally competent and found that his pleas were entered freely and voluntarily with a "full understanding of their consequences and not out of force or fear and not out of inadvertence or coercion." The court found Hernandez guilty.

At sentencing, in March 2012, the court first swore in Brant Garcia to interpret the proceedings. After making sure that both parties received the presentence investigation report, the court told Garcia that he "need[ed] to translate everything that is said, including when I say thank you. You need to say that." Hernandez was sentenced to life in prison with the possibility of parole after 25 years. Hernandez was also sentenced to 155 months in prison on the second count, to be served concurrently. He did not file a direct appeal of his plea, his resulting convictions, or his sentence. He had 14 days from March 8, 2012, to file a notice of appeal. See K.S.A. 2017 Supp. 22-3608(c) (criminal defendant has 14 days from judgment to file a notice of appeal); *State v. Bost*, 21 Kan. App. 2d 560, Syl. ¶ 1, 903 P.2d 160 (1995) (judgment in a criminal case occurs at sentencing, and time to file a notice of appeal runs from oral pronouncement of sentence). Because no appeal was filed, it became final on March 23, 2012.

Over two years later, beginning in August 2014 and continuing until October 2015, Hernandez filed several requests with the clerk of the district court for copies of court records and transcripts. The clerk responded that Hernandez had received a copy of everything in the court file, which did not include any transcripts. The clerk informed him on two separate occasions that he would need to pay for the transcripts and advised him of the cost. Ultimately, in November 2015, the transcripts were completed and sent to the district court clerk.

4

It was not until March 10, 2016, four years after his sentencing, that Hernandez filed a motion under K.S.A. 60-1507 stating that (1): his plea was not made knowingly, willingly, or intelligently; (2) his attorney was ineffective; and (3) the interpreter was inadequate. Hernandez' motion indicates that he had a minimal education, no Spanish legal materials available, and was mentally ill. He alleges that prior to his plea he was severely mentally ill and attempted suicide while incarcerated. He contends that his counsel was ineffective for failing to have him psychologically evaluated after his attempted suicide. Due to his mental illness and his counsel's ineffectiveness, Hernandez concludes that his plea was not knowingly, willingly, or intelligently made. He also argues that the court erred in allowing an unqualified individual to interpret the plea hearing. We pause to note that Hernandez' memorandum specifically focuses on Pennington's interpretation at the plea hearing and he does not mention or object to Garcia's interpretation at the sentencing hearing.

A preliminary hearing on Hernandez' 60-1507 motion was held in November 2016, where no evidence was presented. The court denied Hernandez' motion finding that it was untimely and that manifest injustice did not exist to justify an untimely filing. The court also went on to discuss the merits of Hernandez' claims and found that they did not warrant an evidentiary hearing and did not entitle him to relief. Hernandez filed a timely appeal.

ANALYSIS

Hernandez argues that the court erred in finding that he failed to present claims sufficient to warrant a full evidentiary hearing. He claims that he did not knowingly, willingly, or intelligently enter his plea because his interpreter was inadequate and he was suffering from mental illness at the time of the plea.

5

Before addressing the merits of Hernandez' claims, we must first determine whether his motion was timely.

*Hernandez' motion was untimely.*

A defendant has one year from when a conviction becomes final to file a habeas corpus motion. K.S.A. 2017 Supp. 60-1507(f)(1). The one-year time limitation for bringing an action may be extended by the district court only to prevent manifest injustice. K.S.A. 2017 Supp. 60-1507(f)(2).

At the time this action was filed, the Kansas Supreme Court had held that manifest injustice must be determined by considering whether: (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the time limitation; (2) the merits of the movant's claims raise substantial issues of law or fact deserving the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence. See *Vontress v. State*, 299 Kan. 607, Syl. ¶ 8, 325 P.3d 1114 (2014).

But the Legislature amended the statute in 2016, essentially codifying the first and third factors set out by the *Vontress* court. With the amendment, manifest injustice, as defined by the statute, now requires the court to only consider: (1) "why the prisoner failed to file the motion within the one-year time limitation or [2] whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2017 Supp. 60-1507(f)(2)(A). Accordingly, whether the merits of Hernandez' habeas corpus motion are taken into consideration in determining manifest injustice depends upon whether the amendments to the statute are retroactive.

Whether a statute applies retroactively is an issue of statutory interpretation over which appellate courts have unlimited review. See *State v. Albright*, 307 Kan. 365, 367-

6

68, 409 P.3d 34 (2018). Generally, a statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retrospectively, or (2) the change is procedural or remedial in nature. *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841, 367 P.3d 1252 (2016).

Multiple panels of this court have determined that the 2016 amendment to K.S.A. 60-1507 was procedural in nature and, as such, is to be applied retroactively. See *Wildy v. State*, No. 117,375, 2017 WL 4847851, at *3 (Kan. App. 2017) (unpublished opinion) (citing five unpublished cases from this court that have so held). We agree with the analysis provided in these cases and see no need to reiterate it here.

Hernandez argues that this court should hold that the amendment is not retroactive. In support, he cites to *Hayes v. State*, 34 Kan. App. 2d 157, 161-62, 115 P.3d 162 (2005), where this court held that the Legislature's enactment of the one-year time limit on K.S.A. 60-1507 motions in 2003 could not be applied retroactively. The court held that applying the amendment retroactively would violate an individual's substantive rights because doing so would remove the individual's right to file a K.S.A. 60-1507 motion. 34 Kan. App. 2d at 161-62. But unlike the 2003 amendment, the amendment at issue here does not completely remove the individual's right to file a K.S.A. 60-1507 motion, instead it merely limits what the district court can consider when deciding whether manifest injustice exists. K.S.A. 2017 Supp. 60-1507(f)(2)(A).

Because the 2016 amendment is procedural in nature and the amendment can be applied retroactively, our inquiry is limited to determining why Hernandez failed to file the motion within the one-year time limitation or whether he makes a colorable claim of actual innocence. K.S.A. 2017 Supp. 60-1507(f)(2)(A). But because Hernandez does not make a claim of actual innocence, we are limited to looking at the reasons for the delay. Our standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

*The reasons given for the delay do not support a finding of manifest injustice*

Hernandez claims that his late filing was out of his control. According to Hernandez he was not given access to Spanish legal resources at the Ellsworth Correctional Facility. He also claims that when he first entered Ellsworth Correctional Facility the orientation was held in English only and that he was not made aware of resources available to him. In his original motion, Hernandez also claimed that the court impeded his ability to get his transcripts.

As to Hernandez' access to Spanish legal materials or assistance, the district court found that it was "unable to answer the question with the information currently before it." This court is in a similar position; nothing in the record, beyond Hernandez' statements, indicate that Spanish materials were not available to him at Ellsworth Correctional Facility. Further, there is no indication that Hernandez sought Spanish materials, or aid in understanding English, in a timely fashion. The record does indicate that he "relied upon the assistance [of] other inmates." But there is no explanation as to why it took him several years to do so. Hernandez bears the burden of establishing manifest injustice. See *Vontress*, 299 Kan. at 617.

Hernandez also argues that the district court provided erroneous information at his plea hearing which also contributed to his late filing. At the plea hearing the following colloquy occurred between the court and Hernandez:

"THE COURT: As a result of that finding, you will be giving up your right to a jury trial, and you'll be giving up your right to an appeal as you'll have no trial to appeal from.
"THE DEFENDANT: Yes.
"THE COURT: And do you understand that as long as I sentence you in accordance with the laws of Kansas, you have no right to appeal your sentence?

"THE INTERPRETER: He's just asking once you've made a decision, that he cannot fight the court anymore?

"THE COURT: As long as I follow the laws of Kansas, that is correct. Do you understand that?

"THE DEFENDANT: Yes."

Hernandez argues that this exchange, coupled with an unqualified interpreter at his plea hearing, shows that he was "unclear about whether he could appeal his sentence after he entered a plea" and that the district court misinformed him.

Hernandez' argument is unpersuasive. At his sentencing hearing, the court informed Hernandez that he had "a right to appeal this sentence." He makes no claim regarding the interpreter at his sentencing hearing. While he may not have understood what the district court meant originally at the plea hearing, he brought it to the attention of the interpreter who relayed his question and the court's response. Finally, the district court's statement that "as long as I sentence you in accordance with the laws of Kansas, you have no right to appeal your sentence" was correct. See K.S.A. 2017 Supp. 21-6820(c). Under K.S.A. 2017 Supp. 21-6820(c): "On appeal from a judgment or conviction entered for a felony . . . the appellate court shall not review: . . . (2) any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." Hernandez pled no contest pursuant to a plea agreement. So long as the district court followed the law, Hernandez could not appeal his sentence.

On appeal, Hernandez does not address his original argument before the district court about receiving his transcripts. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Additionally, it appears that Hernandez did not even begin requesting his transcripts until August 2014, more than two years after he was sentenced.

9

Under these two factors, Hernandez has failed to show manifest injustice exists and that the one-year time limitation should be extended. Accordingly, we affirm.

Affirmed.