NOT DESIGNATED FOR PUBLICATION

No. 118,198

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
C.M.G., K.M.G., and K.A.G.,
Minor Children.


MEMORANDUM OPINION


Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed May 11, 2018. Affirmed.

*Sam S. Kepfield*, of Hutchinson, for appellant natural father.

*Richard E. James*, county attorney, and *Miranda Johnson*, of Caffey & Johnson, PA, of Manhattan, guardian ad litem, for appellee.

Before GARDNER, P.J., GREEN and SCHROEDER, JJ.


PER CURIAM: J.G. (Father) appeals the termination of his parental rights to his three children. Upon review of the record, we find the district court's decision to terminate his parental rights is supported by clear and convincing evidence. We affirm.


FACTS


The three children—C.M.G., born in 2003, K.M.G., born in 2004, and K.A.G., born in 2007—were removed from the home of M.G. (Mother) and Father on May 1, 2015, based on an allegation of physical neglect, lack of food and drink in the home, physical abuse of Mother by Father, and excessive use of drugs by Mother and Father.

On July 1, 2015, the children were adjudicated children in need of care (CINC). The district court established a case plan designed to reintegrate the children back into the home, but Father would not sign the case planning forms.

The case plan established parenting time visits and allowed the Kansas Department for Children and Families (DCF) discretion concerning the visitation. Based on the allegations of drug use in the home, the plan required the parents provide and pass a urinalysis test prior to each visit with the children. A positive result for any substance other than marijuana would result in visitation with the children being canceled. As the case plan proceeded, the court ordered that a refusal or failure to take the test would be treated as a positive result. Additionally, if a parent provided a positive test, the reintegration plan required them to submit to an assessment by the Regional Alcohol and Drug Assessment Center (RADAC). The drug testings did not go well. Positive tests or refused tests resulted in many missed parenting time opportunities. The court ordered supervised visitations because a caseworker learned the parents had been smoking from a blue pipe in front of the children.

Visitation by Father was limited. One social worker stated Father had 95 possible visitation days and attended 55. In a report to the court, another social worker asserted there were 92 potential visits and Father attended 48—missed or failed urinalysis tests were the primary reason Father was not allowed to attend visitation. From June 11, 2015, to January 18, 2017, Father missed 25 visits due to skipped urinalysis testings and 2 visits due to tests reflecting positive results for amphetamines. Although the visitations were limited, a caseworker opined the visitations were constructive most of the time.

Throughout this case, the court ordered the parents to undergo various types of assessments and therapy including parenting classes. The parents were also ordered to undergo anger management counseling. Additionally, Father was ordered to obtain a domestic violence assessment. The court ordered both parents to undergo RADAC

assessments and were ordered to follow the recommendations from their respective RADAC assessments. Compliance with the court orders was limited.

Father did not complete the domestic violence assessment until November 12, 2015. One of the recommendations from the assessment was for Father to complete a batterer's intervention program, which the court ordered. Father did not comply.

In the first RADAC assessment, Father told the evaluator his drug use was from years prior and he was not currently using any drugs. After receipt of the first RADAC assessment, the court ordered a second RADAC assessment, and the therapist recommended Father be involved in both group and individual drug and alcohol therapy sessions. Father attended four of nine scheduled individual therapy visits. His individual therapist testified when Father attended, he showed signs of improvement. However, the extent of the improvement was limited due to the low number of sessions Father attended. Father did not participate in group drug and alcohol therapy.

After approximately 14 months in out-of-home placement with little progress by the parents, the district court found reintegration was no longer viable. The State filed a motion to terminate parental rights. The termination hearing occurred on February 14, 2017—approximately 21 months after the children were removed from the home. The district court terminated Father and Mother's parental rights. The court found the parents were not capable of caring for and meeting the needs of the children due to their drug use, lack of participation in court-ordered programs designed to achieve rehabilitation of the family, domestic violence by Father, and lack of regular visitation. Further, the court found it was in the children's best interests to terminate parental rights given their mental and emotional needs.

Father filed a timely verified notice of appeal. Mother did not appeal.

ANALYSIS

*There was clear and convincing evidence Father was unfit to parent his three children.*

Father argues the district court erred in terminating his parental rights because the evidence was not clear and convincing he was an unfit parent.

When reviewing the determination to terminate parental rights, this court considers "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that [the parent's rights should be terminated.]" *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Clear and convincing evidence is evidence that is sufficient to establish that the truth of the facts asserted is highly probable. We do not reweigh the evidence, judge the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

K.S.A. 2017 Supp. 38-2269(a) provides the court may terminate parental rights if there is clear and convincing evidence "the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." Further, K.S.A. 2017 Supp. 38-2269(b) and (c) provide factors for the court to consider when making a determination to terminate parental rights. The list of statutory factors is a nonexclusive list. Any of the statutory factors may be an appropriate reason to terminate parental rights on its own. See K.S.A. 2017 Supp. 38-2269(f). Here, the district court found multiple statutory factors showed unfitness.

*Drug Use*

In considering K.S.A. 2017 Supp. 38-2269(b)(3), the court found Father's use of narcotics was of such duration and nature he was unable to care for the physical, mental, and emotional needs of the children. Under K.S.A. 2017 Supp. 38-2269(b)(7), the court found the efforts to rehabilitate the family failed despite the reasonable efforts of the social agencies. Under K.S.A. 2017 Supp. 38-2269(b)(8), the court found the parents failed to adjust their circumstances, conduct, or conditions to meet the needs of the children. Finally, under K.S.A. 2017 Supp. 38-2269(b)(9), the court found the children had been placed out of the home for more than a year and all four factors from K.S.A. 2017 Supp. 38-2269(c) were applicable:

"(1) Failure to assure care of the child in the parental home when able to do so;
"(2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;
"(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home; and
"(4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay."

The court found the parents' failure to address their drug problems throughout the case supported these findings. They repeatedly did not show up for court-ordered urinalysis testing. When they did perform the urinalysis testing, they provided positive results. Sometimes, the drug use was in the presence of the children during their scheduled visits. The parents did not participate in all of the court-ordered programs designed to help them solve their problems and obtain reintegration. There was domestic violence in the home perpetrated by Father against Mother. Two of Father's convictions for domestic violence against Mother occurred during the case and shortly before the termination hearing. When a urinalysis test was required before a visit, the parents would often skip the visit. The court found Father had at least 92 possible visitation

5

opportunities and he attended only 48. Father had the opportunity to exercise parenting time and failed due to his continued drug use.

The full extent of Father's drug use is hard to determine from the record. He failed to participate in urinalysis testing. As the case progressed, the court ordered drug testing three times a week. Father missed approximately 46 tests due to not showing up, 20 tests were negative, 4 tests were positive for THC (indicating marijuana usage), and 4 tests were missed due to Father being out of town for work, an injury, or legal problems.

Another panel of this court addressed a similar issue in *In re M.A.*, No. 110,069, 2013 WL 6799335, at *5 (Kan. App. 2013) (unpublished opinion). In *In re M.A.*, the court determined a rational fact-finder could find it was highly probable a parent's drug use had rendered her unable to care for the ongoing physical, mental, or emotional needs of her children when the parent had tested positive on 2 occasions and missed 59 urinalysis testings. A major factor in determining drug use had rendered the parent unfit was that the parent had missed approximately 50 visits with his children due to positive drug tests and missed testing. Here, Father tested positive for THC and amphetamines a week prior to the termination hearing. With over one year in the program and limited participation, Father was still testing positive. When all the evidence is considered together—Father's missed urinalysis testings, which led to missed visits with his children, and some of the positive tests—there was clear and convincing evidence his drug use was of such duration and nature to render him unfit under K.S.A. 2017 Supp. 38-2269(b)(3) to care for the ongoing physical, mental, and emotional needs of his children.

*Reasonable Efforts of the Agencies Failed*

The record also reflects Father failed to take advantage of the multiple programs ordered by the court for reintegration. Father failed to complete a domestic violence assessment in a timely fashion but finally did on November 12, 2015. Ultimately, the

6

assessment recommended Father complete a batterer's intervention program. The court ordered Father to do so—he failed to comply. At the time the court terminated his parental rights, Father had not begun the batterer's intervention program. Further, Father has been convicted of four counts of misdemeanor domestic battery involving Mother with two of those counts occurring shortly before the hearing on the termination of parental rights. Father's convictions and failure to complete a batterer's intervention program reflects he was not willing to adjust his lifestyle, circumstances, conduct, or conditions to meet the needs of his children.

Father's involvement with his drug treatment program was sporadic. Following his second RADAC assessment, Father attended four of nine scheduled individual therapy sessions. His therapist opined Father was showing improvement in the sessions he attended even though he only attended four of the appointments. As to his obligation to attend group therapy, he had 12 opportunities and attended none of them. While the record indicates Father did have some improvement with his individual drug therapy sessions, a rational fact-finder could find the multiple missed individual and group therapy sessions reflects Father had not made sufficient effort to change his lifestyle, circumstances, conduct, or conditions to meet the needs of his children.

Although the record reflects some progress in the condition of the family home, when this change is weighed against the lack of change in relation to the treatment involving both drug and domestic abuse ordered by the court, there is clear and convincing evidence Father failed to adjust his lifestyle, circumstances, conduct, or conditions to meet the needs of his three children or to accept and participate in the programs offered by the agencies to rehabilitate Father.

While we acknowledge Father claims transportation to the batterer's intervention program and payment for therapy services was an obstacle for him, we find the claim is not persuasive. The individual sessions of the batterer's intervention program were

available to Father within walking distance of his home—a few blocks. As to payment for the batterer's intervention program, the court ordered St. Francis to pay for the first 15 sessions and Father still did not go. Father was informed on multiple occasions by the court, DCF, and St. Francis there were funds to attend the programs, he just chose not to go. Once again, Father failed to adjust his lifestyle, circumstances, conduct, or conditions to enter the programs offered by the agencies for the benefit of his children. It is clear from the record that financial hardship for Father did not prevent him from obtaining rehabilitative services; rather, despite the efforts extended by DCF and St. Francis as public and private agencies, Father chose not to take advantage of the services. See K.S.A. 2017 Supp. 38-2269(b)(7).

*Visitation*

The children were placed out of the home at the start of the case. The failure to maintain regular visitation, contact, or communication with the children when in out-of-home placement can constitute unfitness. K.S.A. 2017 Supp. 38-2269(c)(2). One social worker testified Father attended 55 of 95 possible visits with his children. However, a court report admitted into evidence shows Father attended 48 of 92 possible visitations. In either case, it is clear Father failed to maintain regular visitation. The primary reason Father did not visit his children was his failure to complete the required urinalysis testings. Outside of the regularly scheduled visitation, there were two opportunities for additional visitation—a birthday party for K.M.G. and a wrestling tournament for K.A.G. Father did not attend either of these events because he failed to participate in the required urinalysis testing. There is clear and convincing evidence Father did not maintain regular visitation or take the extra steps to have parenting time with his children.

Viewing this evidence in the light most favorable to the State, there is clear and convincing evidence Father demonstrated a pattern of drug use which consistently led him to miss regular visitation with his children who had been removed from his home for

8

over 20 months. Even with agency help, Father was unable to accept the help and adjust his circumstances to meet the needs of his children. The district court's finding K.S.A. 2017 Supp. 38-2269(b)(9) applied in conjunction with K.S.A. 2017 Supp. 38-2269(c)(1)-(4) is supported by the evidence.

*Foreseeable Future*

As we consider a parent's unfitness, we look to see if the conduct or condition is likely to change in the foreseeable future. Two principles are instructive. First, the foreseeable future is measured from the perspective of a child and not an adult. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). Second, the best indication of a parent's future performance is how they performed in the past. See *In re M.A.*, 2013 WL 6799335, at *6.

Father has shown his conduct is not likely to change in the foreseeable future. Concerning the drug use, Father minimally participated in treatment. A week before the hearing to terminate his parental rights, he tested positive for THC and amphetamines. The lack of participation throughout the case and drug use shortly before the termination hearing shows Father's drug use is not likely to change in the foreseeable future. The record fails to reflect that even if given more time, Father would begin to participate in his drug and domestic violence therapy programs or change his conduct to fully meet the needs of his children. There is clear and convincing evidence Father's conduct which rendered him unfit would not change in the foreseeable future.

*Best Interests*

In some cases, the final analysis turns on whether termination of parental rights is in the best interests of the child. K.S.A. 2017 Supp. 38-2269(g). The district court's determination is reviewed for an abuse of discretion. Father did not brief the issue before

this court. Therefore, Father has abandoned the issue by his failure to brief it. See *Superior Boilerworks, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). While Father may have incidentally raised the issue in his section on the standard of review, a point that is incidentally raised but not argued is also deemed abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

Finally, the district court's best-interests-of-the-child determination is reviewed for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.,* 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party asserting an abuse of discretion bears the burden of proving the abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Father has not satisfied this burden since he failed to brief whether the district court abused its discretion. Even if considered, under the facts of this case, there is clear and convincing evidence the decision to terminate Father's parental rights was in the best interests of the children.

Affirmed.